50 A.3d 1196

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Jeffrey LAWSON.

Misc. Docket AG No. 4, Sept. Term, 2008.

Court of Appeals of Maryland.

Aug. 21, 2012.

Dolores O. Ridgell, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., HARRELL, GREENE, MURPHY *, ADKINS and BARBERA JJ.

PER CURIAM.

In 2007, we suspended Jeffrey Lawson from the practice of law as a result of his improper efforts to increase a fee by threatening withdrawal after beginning representation of a client. *Attorney Grievance Comm'n v. Lawson,* 401 Md. 536, 933 A.2d 842 (2007). Mr. Lawson has not practiced law since that time. In this case, we disbar him in light of other fee-related misconduct he committed prior to his suspension.

In this matter, the Attorney Grievance Commission (the "Commission") charged Mr. Lawson with violating numerous provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). The alleged violations all arose during Mr. Lawson's representation of Harry F. Fields in an uncontested divorce and subsequent division of marital property.

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of the Court, but did not participate in the decision or adoption of this opinion.

Pursuant to Maryland Rules 16–752(a) and 16–757, we referred the matter to Judge Robert E. Cahill, Jr., of the Circuit Court for Baltimore County to conduct a hearing and to provide findings of fact and recommended conclusions of law.

Mr. Lawson declined to participate in the hearing before Judge Cahill. In his absence, Judge Cahill entered a judgment by default [1] and held an evidentiary hearing at which the court received documentary and testimonial evidence. Judge Cahill made various findings of fact and concluded that Mr. Lawson violated MLRPC 1.2(a) (duty to abide by the client's decisions concerning the objectives of the representation); 1.5(a) (prohibition against charging an unreasonable fee); 1.8(a) (restriction on business transactions with clients); 1.15(a) (duty to safekeep the property of clients); and 8.4(a), (c), (d) (professional misconduct involving violation of disciplinary rules, dishonesty, and other conduct prejudicial to the administration of justice). He concluded that Mr. Lawson did not violate MLRPC 1.1 (duty to provide competent representation).

Neither Mr. Lawson nor the Commission filed exceptions to Judge Cahill's findings of fact or recommended conclusions of law. We explain below why Mr. Lawson must be disbarred.

### Background[2]

*The Divorce Case*

Jeffrey Lawson was admitted to the Maryland Bar on April 1, 2004. On or about January 24, 2006, Harry F. Fields engaged Mr. Lawson in connection with a property settlement and divorce. At that time, Mr. Fields was homeless, diabetic, and hypertensive, and suffered from vision impairment because of glaucoma. He knew Mr. Lawson because they were

---

1. As a result of the default, the averments contained in the Commission's Petition for Disciplinary Action were deemed admitted, and we consider them as true under Rules 2–613(f) and 2–323(e). *See Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 525 n. 7, 890 A.2d 273 (2006).

2. Unless specifically noted otherwise, the facts are derived from Judge Cahill's findings.

both Muslims and worshiped at the same masjid.[3]  Mr. Fields' estranged wife had recently offered him $5,000 for his share of any marital property as part of the finalization of their divorce, and it was with an eye toward obtaining a larger share of the marital property that Mr. Fields retained Mr. Lawson. Mr. Fields signed a written fee agreement in which he agreed to pay Mr. Lawson $250 per hour plus costs and expenses and in which Mr. Lawson agreed to represent Mr. Fields in his divorce.

Cracks in the attorney-client relationship soon developed, however.  An initial problem was a disagreement over meeting locations that would continue throughout the representation.  Mr. Fields, who was then sleeping at the masjid, requested that their meetings take place in Mr. Lawson's law office.[4]  Instead, Mr. Lawson would only agree to meet in the masjid where, in Mr. Fields' words, they could be overheard by others; on the street; in Mr. Lawson's vehicle; or in a parking lot.  This initial disagreement further developed into a fee dispute because, according to Mr. Fields, Mr. Lawson billed Mr. Fields for all travel time to and from their rendezvous points.  Mr. Fields' testimony suggests that Mr. Lawson would travel to the masjid for prayer and deliver papers to Mr. Fields while he was there.  He would then, according to Mr. Fields, bill Mr. Fields for the entire trip.

On March 6, 2006, Mr. Lawson filed on Mr. Fields' behalf a Complaint for Temporary Restraining Order, a Preliminary Injunction, and a Limited and Absolute Divorce and Partition in the Circuit Court for Prince George's County.[5]  Then, in mid-March, Mr. Fields was given a bill for approximately $12,000.  Mr. Fields disputed the amount of the bill and

3.  According to Mr. Fields, a masjid is a mosque.

4.  It is not clear from the record whether Mr. Lawson had a law office.

5.  Although Mr. Lawson and Mr. Fields were both residents of Baltimore City, Mr. Fields' wife and the marital home were located in Prince George's County.

sought to involve their imam in resolving the dispute, but Mr. Lawson refused to moderate his demands.

There was further disagreement as to what actions Mr. Lawson would take in his representation of Mr. Fields. In pursuing the divorce claims, Mr. Lawson engaged in extensive discovery related to a Motion for Entry Upon Jointly Owned Land. Mr. Fields testified that he did not wish to enter the home or spend time with his estranged wife and that he did not authorize Mr. Lawson to take this action. The discovery documents in the record indicate that Mr. Lawson was requesting temporary entry in order to photograph and identify marital property located in the marital home. Mr. Fields also testified that he directed Mr. Lawson to contact a judgment creditor and attempt to negotiate a reduction of the amount owed prior to the settlement on the property but that Mr. Lawson did not do so.

On or about May 23, 2006, the circuit court master awarded Mr. Fields temporary support, *pendente lite,* from his wife in the amount of $500 per month. Mr. Lawson directed Ms. Fields to send these funds to himself, though the record does not indicate that any funds were ever transferred, and both sides filed exceptions to the support award.[6]

While the divorce action was still pending, on August 2, 2006, Mr. Fields and his wife negotiated and signed a settlement agreement that resolved the property dispute. The agreement provided, in part, for the sale of the marital home and equal division of the proceeds.[7] Mr. Fields was unable to read the settlement agreement due to his poor eyesight, so he brought a female friend to the settlement conference to assist him in reading the documents. Mr. Lawson refused to permit Mr. Fields to sit next to the woman. In his original complaint to the Commission, Mr. Fields explained that Mr. Lawson was

---

6. The award would not be affirmed until October 11, 2006, however, just two days before the divorce was ultimately granted.

7. The only significant asset of the Fields' marriage was a residential property located in Riverdale, Maryland.

concerned that it would give the impression that Mr. Fields was in an extra-marital relationship with the woman. The record contains no greater detail on this incident.

On September 22, 2006, Mr. Lawson filed a Motion to Enforce Attorney's Lien and Enjoin Distribution of Proceeds of Sale. He filed this motion on behalf of Mr. Fields, and the motion requested, among other things, that the court order that any proceeds from the sale of the marital home be given to Mr. Lawson and not Mr. Fields. The basis for this request was a March 7, 2006, lien agreement that Mr. Lawson had persuaded Mr. Fields to sign several months into the representation.[8] The agreement purported to create a lien for attorney's fees against any proceeds recovered. Mr. Fields testified that at some unidentified later time he entered into a handwritten settlement agreement with Mr. Lawson to resolve a fee dispute and believed that Mr. Lawson had agreed to accept $3,500 as payment. According to Mr. Fields, he later discovered that the handwritten document actually called for Mr. Lawson to reduce the fee, which had ballooned to approximately $46,000, down to $35,000.[9] Mr. Lawson entered into this business transaction with Mr. Fields without advising Mr. Fields verbally or in writing of his option to seek independent legal counsel, nor did Mr. Lawson give Mr. Fields a reasonable opportunity to do so. As a result of this agreement, Mr. Lawson received the entirety of Mr. Fields' share of the proceeds from the sale of the marital property. Mr. Fields ultimately came away from the settlement with less than he started with because his share of the proceeds was still $3,000 short of the full legal bill that Mr. Lawson claimed he was owed.

---

8. Mr. Lawson sometimes presented documents for Mr. Fields to sign at their meetings. Mr. Fields was unable to read the documents because of his vision impairment, but he signed the documents without reading them, trusting, in his words, in Mr. Lawson's honesty.

9. No copy of this settlement agreement is present in the record. Mr. Fields testified that his poor vision made it difficult for him to tell how many zeroes were in a line of repeated zeroes.

During the representation, Mr. Fields had also furnished Mr. Lawson with certain documents, among which was the title to a van. After the representation ended, Mr. Lawson returned some of the documents, but he did not return the title to the van.

Additionally, the records indicate that Mr. Lawson billed Mr. Fields at his full rate of $250 per hour for simple clerical tasks such as preparing a fax cover sheet ($50) and making copies ($50 on one occasion, $100 on another). Similarly, he charged his full rate for driving time to the courthouse to file motions, resulting in several charges in excess of $500 per round trip. He also billed $850 for preparing and filing requests to waive filing fees for his client.

On or about September 17, 2006, Mr. Fields asked Mr. Lawson whether he was the same Jeffrey Lawson who was the subject of an attorney disciplinary case then pending in the Circuit Court for Baltimore County. Mr. Lawson denied that this was the case. This was a lie, as Mr. Fields discovered when he attended a hearing scheduled in that matter.

*Complaint and Investigation*

Several months later, on or about December 7, 2006, Mr. Fields complained to the Commission about Mr. Lawson's conduct. A series of letters between the Commission and Mr. Lawson followed, with Mr. Lawson refusing to respond to the complaint or comply with a subpoena to provide records and give testimony.[10] This impasse continued until August 16, 2007, when the Commission received the following documents: Client Expense Log, Client Billing Summary, and Time Sheet for Harry Frederick Fields. The Commission again requested the full file, including any records of funds received from or on

10. Mr. Lawson had retained counsel, the same counsel he retained for his earlier disciplinary matter, but in July 2007 his counsel announced his intention to withdraw his appearance, claiming an inability to comply with the subpoena because Mr. Lawson refused to cooperate. Nonetheless, the record does not make clear whether counsel ever did withdraw.

behalf of Mr. Fields. Mr. Lawson never produced any additional documents.

*The Hearing Judge's Conclusions of Law*

In a detailed analysis based on these facts, Judge Cahill concluded that Mr. Lawson violated MLRPC 1.2(a) (duty to abide by the client's decisions concerning the objectives of the representation); 1.5(a) (prohibition against charging an unreasonable fee); 1.8(a) (restrictions on business transactions with clients); 1.15(a) (duty to safekeep the property of clients); and 8.4 (professional misconduct involving violation of disciplinary rules, dishonesty, and other conduct prejudicial to the administration of justice). Judge Cahill found no violation of MLRPC 1.1 (duty to provide competent representation). Neither party filed exceptions.

## Discussion

We review the hearing judge's conclusions of law *de novo* pursuant to Rule 16–759(b)(1).

### *MLRPC 1.1*

MLRPC 1.1 provides that a lawyer shall provide competent representation to a client. We agree with Judge Cahill that the Commission has failed to establish, by clear and convincing evidence, that Mr. Lawson did not employ proper legal knowledge, skill, thoroughness, and preparation in his representation of Mr. Fields. There was, accordingly, no violation of MLRPC 1.1.

### *MLRPC 1.2*

MLRPC 1.2(a) provides in relevant part that:

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a

matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

■ Judge Cahill found that Mr. Lawson's pursuit of the Motion for Entry Upon Jointly Owned Land and related discovery constituted a violation of MLRPC 1.2. We disagree. Although Mr. Fields' complaint and testimony before the lower court unambiguously show that Mr. Fields did not want to move back in with his wife, it also shows that he had no idea about the purpose of discovery.[11] Further, an examination of the motions and discovery filed by Mr. Lawson does not establish that he was trying to obtain for Mr. Fields re-entry into the property for purposes of living there with his estranged wife. The evidence is plain that the motion related solely to a brief re-entry in order to inspect the property, take

---

11. The pertinent section of Mr. Fields' direct examination reads as follows:

Q: Did [Mr. Lawson] file motions to allow you to enter the home property?
A: Yes, he did.
Q: Did you want him to do that?
A: I told him I didn't want to do that because you are separating, you stay separated, and why file to go back in the house. It didn't make sense.
Q: Mr. Lawson filed a motion to compel discovery. Did you approve that?
A: I didn't understand exactly what discovery was. He took a lot of documents from me, personal information documents.
Q: Did you want Mr. Lawson to have your wife sanctioned for not providing discovery?
A: I'm not understanding what that means exactly.
Q: During the litigation Mr. Lawson filed a motion to compel and for sanctions against your now ex-wife.
A: Sanctions means?
Q: Sanctioning would be that she would possibly be not allowed to produce evidence.
A: Yeah, there was a lot of back and forth between her attorney and him and arguing in the courtrooms and things between the two attorneys in the beginning.
Q: Is that something that you had approved?
A: No, I didn't, I didn't. I asked a lot of questions about different words that I didn't understand and he kept saying first things first.

photographs, and identify any of Mr. Fields' personal property that may have been left by him. This is entirely consistent with Mr. Fields' objective of obtaining a more favorable division of the marital property. Mr. Fields' misunderstanding of what Mr. Lawson was doing is problematic, but it does not necessarily mean there was a violation of MLRPC 1.2.

█ Additionally, Judge Cahill found that Mr. Lawson's refusal to negotiate a reduction in Mr. Fields' obligations to his creditors was a violation of 1.2. Again, we do not agree. There is no evidence that Mr. Lawson agreed to represent Mr. Fields in any matter other than the divorce proceeding, and indeed their written agreement contemplates representation only as to that proceeding. MLRPC 1.2(c) permits reasonable limitations on the scope of representation, and we cannot say that Mr. Lawson's refusal to represent Mr. Fields in an unrelated creditor dispute was unreasonable. We therefore find no violation of MLRPC 1.2.

### MLRPC 1.5

█ MLRPC 1.5 provides, in relevant part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; . . .

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained; . . .

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services. . . .

Judge Cahill found that Mr. Lawson's fee here was unreasonable. Judge Cahill noted, and we agree, that while the agreed-to $250 per hour rate was reasonable, the number of hours logged and the $46,043.81 final fee, later reduced by

agreement to $35,000, was unreasonable given the nature of the representation. It is generally a violation of the MLRPC for the attorney's stake in the result to exceed the client's stake, as was the case here. *Attorney Grievance Comm'n v. Roberson,* 373 Md. 328, 350, 818 A.2d 1059 (2003).

While Mr. Lawson's choice to engage in extensive discovery and a motions dispute over entry into the home might have been consistent with his pursuit of Mr. Fields' legal objectives, in this context, where the value at stake was so small, the limited likelihood of material advantage to Mr. Fields cannot reasonably have been expected to balance out the heavy legal fees accumulated. Mr. Lawson's choice to insist on out-of-office meetings with Mr. Fields and then to bill for the travel time is similarly troubling, as are his bills for travel time to file motions, secretarial work, and preparation of filing fee waiver requests.

We agree with Judge Cahill that these practices, in this context, constitute unreasonable fees. Therefore, we find that Mr. Lawson violated MLRPC 1.5.

### *MLRPC 1.8*

MLRPC 1.8 provides, in pertinent part:

(a) A lawyer shall not enter into a business transaction with a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

This rule is intended to prevent "overreaching" when a lawyer engages in a financial transaction with a client, given a lawyer's skill and training and the relationship of trust with a client. MLRPC 1.8, comment (1). "It does not apply to ordinary fee arrangements between client and lawyer, . . . although its requirements must be met when the lawyer accepts an interest in the client's . . . nonmonetary property as payment of all or part of a fee." *Id.*

In this case, Mr. Lawson induced his client to enter into a settlement agreement concerning the disputed attorney's fee that gave Mr. Lawson a lien on the proceeds of Mr. Fields' marital property settlement—a lien that encompassed all of Mr. Fields' share of the settlement. Given Mr. Fields' apparent poor eyesight and lack of understanding of the law, as well as the legalese contained in the agreement itself, we cannot but find that the terms of the lien were not communicated in a manner likely to be reasonably understood by Mr. Fields. Further, Mr. Fields' poor eyesight, which Mr. Lawson had cause to know about, makes it unreasonable for Mr. Lawson to have believed that Mr. Fields could read a handwritten settlement agreement. Additionally, there is no evidence that Mr. Fields was advised in any way of the desirability of seeking independent legal counsel or that he was given opportunity to do so. Finally, there is no evidence in the record to suggest that Mr. Fields gave informed consent, written or otherwise, to the essential terms of the transaction and Mr. Lawson's role in the transaction. Even if settlement of a fee dispute by itself would not be within the purview of MLRPC 1.8, Mr. Lawson was obligated to comply with that rule when he entered into a lien agreement to satisfy the fee. We agree with Judge Cahill that he failed to do so.

*MLRPC 1.15*

■ MLRPC 1.15 requires, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

Judge Cahill found that there was a fee dispute between Mr. Lawson and Mr. Fields. On that basis, he concluded that Mr. Laws violated MLRPC 1.15 by failing to segregate the proceeds of the marital property settlement as client property. We disagree. Judge Cahill's factual finding, which is in agreement with the testimony of Mr. Fields, was that there was a fee dispute over Mr. Lawson's original $46,043.81 fee. However, Judge Cahill's further finding, also in agreement with the testimony, was that Mr. Lawson and Mr. Fields entered into a written settlement agreement. While we recognize that there are any number of problems with the settlement—for example, whether Mr. Fields and Mr. Lawson in fact reached a meeting of the minds as to the amount to be paid to Mr. Lawson—the record is silent as to whether Mr. Fields ever continued the dispute with Mr. Lawson after the document was signed. Where a fee dispute has been resolved by settlement and there is no evidence of later dispute, we cannot say that there was an ongoing fee dispute merely because the amount of the settlement was unreasonable or in violation of the MLRPC.

█ In any event, Mr. Lawson's failure to return the title to Mr. Fields' van after the representation had concluded was a violation of his duty under MLRPC 1.15(a) duty to safeguard the property of clients.

*MLRPC 8.4*

MLRPC 8.4 provides that it is professional misconduct to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice. . . .

Our findings that Mr. Lawson violated MLRPC 1.5, 1.8, and 1.15 justify a finding that Mr. Lawson violated 8.4(a). Mr. Lawson's dishonesty toward Mr. Fields about his pending attorney disciplinary matter justifies a finding that Mr. Lawson violated 8.4(c). Finally, Mr. Lawson's unreasonable fees and mis-handling the subsequent fee disputes violated 8.4(d).

## Sanction

█ The Commission recommends that Mr. Lawson be disbarred. Mr. Lawson has a history of creating and then mismanaging client fee disputes, generally stemming from an inability to communicate effectively and honestly with his clients. *See Attorney Grievance Comm'n v. Lawson*, 401 Md. 536, 933 A.2d 842 (2007). As a result of prior disciplinary proceedings that were ongoing during Mr. Lawson's representation of Mr. Fields, Mr. Lawson is currently suspended from the practice of law in Maryland. He was given a one year suspension in 2007, and he has not applied for reinstatement. It is evident from the facts of this case that Mr. Lawson is not one to learn from his mistakes. The current case merely demonstrates to a fuller extent the seriousness of Mr. Lawson's ethical difficulties.

█ The appropriate sanction for a violation of the MLRPC generally "depends on the facts and circumstances of each case, including consideration of any mitigating factors," *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d at 693, 713 (2005), in furtherance of the purposes of attorney discipline: "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of

Professional Conduct, and to maintain the integrity of the legal profession." *Id.*

We note also the aggravating factors found in 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1991). These include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law; and

(j) indifference to making restitution.

Here, we find the aggravating factors (a), (b), (c), (d), (e), (g), (h), and (j). Mr. Lawson was already engaged in an attorney disciplinary proceeding at the time he committed the acts in question. His behavior was clearly motivated by a desire to obtain fees to which he was not entitled. This behavior continued over many months. When challenged by the Commission, he refused to comply with the investigation or attend a circuit court hearing on the matter. Mr. Lawson took advantage of an elderly man in poor health and with limited means. This Court knows of no efforts made by Mr. Lawson toward restitution.

We have previously held that cases involving improper retention of fees, failure to communicate promptly with clients, and failure to respond to Bar Counsel's lawful demands for information during an investigation warrant disbarment. *Attorney Grievance v. Lara*, 418 Md. 355, 365, 14 A.3d 650, 657

(2011). On the record of this proceeding, disbarment is the appropriate sanction.

RESPONDENT IS DISBARRED; IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS FOR ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JEFFREY LAWSON; ORDER TO TAKE EFFECT UPON FILING.