BATTAGLIA, J.,
dissenting, which WATTS, J., joins.
I respectfully dissent as to the sanction only because disbarment is the appropriate sanction in this case, not indefinite suspension.
Shapiro’s conduct amounted to violations of the Maryland Lawyers’ Rules of Professional Conduct (“MLRPC”) 1.2, 1.8, 1.4, 1.8, 1.16 and 8.4(a), (c) and (d). It is his actions, in actively misrepresenting the status of a case to his client for five years, constituting a violation of Rule 8.4(c), which propel his sanction into the realm of disbarment.
Intentional violations of MLRPC 8.4(c) constitute “most egregious misconduct.” Attorney Grievance v. Davy, 435 Md. 674, 708, 80 A.3d 322, 342 (2013). “[W]hen a [lawyer] engages in dishonest or fraudulent conduct as proscribed in M[L]RPC 8.4(c), we do not discuss ‘degrees’ of dishonesty, but generally order disbarment, absent compelling extenuating circum *409 stances.” Id. at 709, 80 A.3d at 342 (internal quotations omitted). In cases where an attorney’s repeated material misrepresentations constitute a pattern of deceitful conduct, as opposed to an isolated instance, the appropriate sanction, as a general rule, is disbarment. See Attorney Grievance v. Steinberg, 395 Md. 337, 373, 910 A.2d 429, 450 (2006) (“We long have held that repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment.”). If nothing else, lawyers must be honest:
Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in any attorney’s character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.
Id., quoting Attorney Grievance v. Vanderlinde, 364 Md. 376, 418, 773 A.2d 463, 488 (2001). “When attorneys engage in dishonest and deceitful conduct for personal gain, this Court does not hesitate to sanction such conduct with disbarment[.]” Attorney Grievance v. Levin, 438 Md. 211, 231, 91 A.3d 1101, 1113 (2014).
Attorney Grievance v. Pennington, 387 Md. 565, 876 A.2d 642 (2005), is instructive. In that matter, the clients’ case was dismissed, but rather than communicating the dismissal to the clients, Pennington presented a “settlement” of their claims (which included false supporting documents) to her clients with the intent that they not learn of the suit’s dismissal. Instead of disclosing the dismissal of the claim, the respondent attempted to make her clients whole by paying them out of her personal funds what she thought they would find agreeable and what she perceived to be a fair sum. Also, Pennington denied repeatedly any dishonesty on her part and misrepresented intentionally matters in negotiations with a third party health care provider. We described the circumstances as the respondent’s “attempt to purchase a plenary indulgence with her own money [which was] more indicative of a selfish *410 plan to conceal than of a praiseworthy desire to ‘make the client whole.’” Id. at 598, 876 A.2d at 661. The Court concluded that, regardless of whether she intended to prevent her clients from finding out that they had a potential legal malpractice claim against her or whether she acted out of a desire to spare her clients further anguish, “the profession is harmed when an attorney intentionally misrepresents matters to a client and behaves in the manner as did respondent” and that such behavior warrants disbarment. The facts of the present case are similar to those in Pennington. Here, Shapiro did not communicate to Wisniewski the true status of her medical malpractice claim, but instead, to hide the facts, told her that he had secured a settlement on her behalf. When Wisniewski met with Respondent to learn more about the terms of her settlement, he told her that he did not have the money. Although the hearing judge did not determine if Respondent intended to “come clean” at the latter meeting with Wisniewski, or if he would have paid her from his own funds had he the cash on hand, Respondent’s deceit is in the same church (if not exactly the same pew) as that of the attorney in Pennington.
In Steinberg, 395 Md. 337, 910 A.2d 429, the respondent’s misconduct was committed with respect to three different parties (two clients and an attorney colleague), yet elements of this case are reminiscent of Shapiro’s case. Steinberg failed to file a petition for bankruptcy on behalf of a client and then failed to forestall a foreclosure sale that was the reason for seeking the protection of the bankruptcy court. When asked by the client for a status update, Steinberg responded dishonestly by saying that he had filed the petition (he filed later one without her consent or signature). In another client matter, Steinberg entered into an agreement that limited liability for his professional negligence where his client was not represented independently and did not have an opportunity to consider the document or obtain advice of counsel, in violation of MLRPC 1.8. These actions, in addition to other misconduct (including violations of MLRPC 1.1, 1.4, 1.5(c), 1.16, 3.1, 3.2, 3.3, 3.4 and 4.1), warranted disbarment. As in Steinberg, *411 Shapiro failed to file a necessary document, in this case, a Certificate of Merit, and then misled his client as to whether he had done so. Further, Shapiro entered into a settlement agreement with Wisniewski, in violation of MLRPC 1.8.
The attorney in Davy, 435 Md. 674, 80 A.3d 322, was disbarred for violations of MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16 and 8.4, where her misconduct involved dishonesty, multiple clients, unreasonable fees and the mishandling of client funds. In that matter, the respondent attempted to file a complaint in federal court, but it was rejected for being incomplete. The suit was ultimately dismissed. When the client learned through other channels that the complaint had been dismissed, she asked the respondent for return of her retainer. Without the client’s permission, at a time months later when the attorney should have known that the representation was over, she filed a corrective motion in federal court and asked the client for more money. The respondent led her client to falsely believe that the case had been filed, although the attorney knew the complaint had been rejected, yet still asked for more retainer payments. She told another client that a summons had been issued by the court when in fact it was not. Even after her client learned of the truth of matters and confronted the attorney, Davy attempted to deflect blame by telling the client that she discovered a technical error with the filing. She lied further to the client about what corrective services for which she would charge. In another client matter, it took the respondent four months to file a petition for bankruptcy after being retained, and thereafter failed to correct deficiencies in that petition until the bankruptcy court issued a third deficiency notice. Finally, the respondent mishandled client funds.
When considering the appropriate sanction, we noted that the respondent showed a dishonest or selfish motive involving the receiving and keeping of money, mislead her clients as to the quality of her representation and continued to act on the client’s behalf after the representation had ended to justify continuing to demand payments from the client. Davy was disbarred. Unlike Davy, Shapiro was not charged with fiscal *412 misconduct. Nonetheless, Respondent, like Davy, failed to file appropriate pleadings and did not take responsibility immediately for his failures, but instead misled Wisniewski into thinking that her claim was alive and, further, that a settlement had been reached.
The misconduct in Attorney Grievance v. Bleecker, 414 Md. 147, 994 A.2d 928 (2010), resembles the misconduct in Shapiro’s matter. In Bleecker, the respondent did not file timely in court his client’s claim and ultimately missed the statute of limitations deadline. Once he became aware of the “blown” statute of limitations deadline, a conflict of interest existed between himself and his client, such that he should have withdrawn from representation and told his client to seek independent counsel, which he did not. Moreover, he failed to inform his client that her case was dismissed and that the statute of limitations expired. Bleecker failed also to correct a material mistake on filed pleadings, and later, to respond to three letters from Bar Counsel seeking information regarding the client complaint. Violations of MLRPC 1.1, 1.3, 1.4, 1.16, 3.3, 8.1 and 8.4 were found. We concluded that the “gravamen of the misconduct” was the respondent’s concealment from his client of the statute of limitations bar, which precluded her from any possible recovery. Bleecker’s failure to correct the misrepresentation to the court and his failure to respond to Bar Counsel were also significant to the Court in its sanction analysis. The appropriate sanction was disbarment. The “gravamen” of Shapiro’s misconduct is also his concealment of the true status of Wisniewski’s claim from her and his direct misrepresentations to that effect, and the improperly obtained settlement agreement.
The respondent in Attorney Grievance v. Lane, 367 Md. 633, 647, 790 A.2d 621, 629 (2002) found himself caught in a snowballing series of lies, similar to that of the Respondent in this matter, although the cumulative lies of the attorney in Lane were of “the most egregious nature” and the misconduct was committed against two clients. Lane took no action on a client’s case and filed no pleadings of any kind, yet told his client that a subpoena had been issued for the opposing party. *413 He met his client at the courthouse and told his client that the opposing party had failed to appear. Lane then took his leave by pretending to have a meeting with the judge, and returned to inform falsely his client that the judge would rule in his favor. He claimed later that the opposing party had filed a “stay.” With respect to another client, Lane did not communicate properly the terms of their fee arrangement, paid some of the client’s bills from his own funds, and did not file the appropriate pleadings in order to secure an injunction against a utility threatening to turn off his client’s water service. He then said that he filed a motion for sanctions against the water company for turning off his client’s water, and paid his client a sum of money that he said came from the company as a result of the sanctions action, but, in reality, came from his own funds. Finally, he told the same client that he filed a motion for summary judgment, which was granted, resulting in an award to her of over 11 million dollars. She was told to come to the courthouse with a suitcase and security to carry the cash home. When she arrived at the courthouse, he confessed that he had misled her completely regarding the status of her lawsuit and that no money was forthcoming. It was little surprise that Lane was disbarred. Like the attorney in Lane, Shapiro misrepresented to Wisniewski the status of her claim, and then concocted a fictional “settlement” of her claim against the hospital.
In Attorney Grievance v. Brown, 426 Md. 298, 44 A.3d 344 (2012), the respondent committed various acts of misconduct with respect to four clients. He failed to pursue a client’s claims in a timely manner, which caused the statute of limitations to expire before the case was dismissed for a failure to prosecute. The attorney failed also to answer discovery requests and incurred sanctions in another client matter. Brown did not inform his clients about the dismissal or the sanctions and ignored repeated requests for information from another client. Further, Brown did not return documents in his case file to a client in a timely manner, and also did not respond to two letters from Bar Counsel requesting information regarding the client’s complaint. Such conduct violated *414 MLRPC 1.1, 1.2, 1.3, 1.4, 1.16, 3.2 and 8.1(b). We held also that the manner in which Brown misled his client violated MLRPC 8.4(c), as he told one of his clients that the case was pending in arbitration, when, in actuality, it was dismissed two years previously. Given the “gravity and pervasiveness” of Brown’s misconduct, we concluded that disbarment was the appropriate sanction. Id. at 328, 44 A.3d at 362; see also Attorney Grievance v. Kremer, 432 Md. 325, 335-36, 340-41, 68 A.3d 862, 866-69, 871 (2013) (disbarring an attorney who committed misconduct with respect to four clients, failed to cooperate with Bar Counsel, failed to file bankruptcy petitions for multiple clients, missed hearings, caused a case to be dismissed, failed to respond to clients, abandoned cases before completion, and failed to return documents and unearned fees); Attorney Grievance v. Park, 427 Md. 180, 196, 46 A.3d 1153, 1162 (2012) (“[DJisbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client’s interests, failing to communicate with the client, ignoring a client’s repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees. Respondent did all of this and failed to cooperate with Bar Counsel’s lawful demands for information, in violation of MLRPC 8.1.”).
When an attorney’s misrepresentations are paired with violations of the MLRPC provisions regarding unreasonable fees or client or third party property (and especially money), the appropriate sanction is most often disbarment. In Attorney Grievance v. Lawson, 428 Md. 102, 117, 50 A.3d 1196, 1205 (2012), an attorney was disbarred for violations of MLRPC 1.5, 1.8, 1.15 and 8.4(c) and (d). Lawson was dishonest with a client about whether an attorney grievance matter was pending against him. The attorney also charged his client an unreasonable fee and mishandled a subsequent fee dispute by inducing the client to enter into a settlement agreement that gave the attorney a lien on the client’s settlement proceeds of a marital property dispute. The terms of the settlement agreement were not communicated in a way *415 that the client could understand, and the client did not give informed consent, written or otherwise, as to the essential terms of the transaction. Because Lawson created and then mismanaged client fee disputes, and was motivated by a desire to obtain fees to which he was not entitled from an elderly man in poor health with limited means, we disbarred him. The Respondent in the present case executed an agreement with Wisniewski that violated the MLRPC in the same critical way as the agreement in Lawson: Respondent did not give Wisniewski a written disclosure of the desirability of seeking independent counsel prior to entering into the agreement with Respondent. By the same token, there is no MLRPC 1.15 violation in Shapiro’s case.
Although Shapiro’s violations do not involve multiple clients and cases, his misconduct spans a multiple-year period. He actively misrepresented the status of the case to Wisniewski for five years and failed to inform her of the difficulties he had in finding a doctor to execute a Certificate of Merit. Not only did Respondent lie to Wisniewski about the status of her case, his lies spiraled: he told her that the case had settled when no such settlement had occurred, but ultimately he did not have the money available to fund the “settlement.” Respondent only told Wisniewski the truth about her case—-that it had been dismissed, that the statute of limitations had passed, and that no settlement occurred—after she filed a complaint with the Attorney Grievance Commission. Respondent violated additional MLRPC by settling a potential legal malpractice claim with Wisniewski without advising her in writing of the desirability of seeking the advice of independent counsel or obtaining her informed consent, confirmed in writing, to the essential terms of the transaction.
Accordingly, I would order Respondent’s disbarment.
Judge Watts authorizes me to state that she joins the views expressed in this dissenting opinion.