*Attorney Grievance Commission of Maryland v. Eugene Alan Shapiro*, No. 83, September Term, 2013

**ATTORNEY MISCONDUCT—DISCIPLINE—INDEFINITE SUSPENSION**
Court of Appeals suspended indefinitely attorney who did not protect adequately a client's claim from expiration as the result of the running of the statute of limitations, failed to keep a client informed as to the status of her case, misrepresented the true status of the claim to the client for five years, entered into a business transaction with a client without advising the client in writing of the desirability of seeking independent counsel first, and failed to withdraw immediately after learning of the potential cause of action that his client may have had against him. Such conduct violated Maryland Lawyers' Rules of Professional Conduct 1.2, 1.3, 1.4, 1.8, 1.16, and 8.4(a), (c) and (d).

Circuit Court for Baltimore County
Case No. 03-C-13-13179
Argued: 5 December 2014

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 83

September Term, 2013

---

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

EUGENE ALAN SHAPIRO

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.
Battaglia and Watts, JJ., dissent.

---

Filed: January 30, 2015

I. Statement of the Case & Procedural History

In this attorney disciplinary action, the Attorney Grievance Commission of Maryland ("Petitioner" or "the Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("PDRA") against Eugene Alan Shapiro, Esquire ("Respondent" or "Shapiro"), charging him with violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") arising from his representation of Diana Wisniewski ("Wisniewski"). Respondent was charged with violating MLRPC 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer),[1] 1.3 (Diligence),[2] 1.4 (Communication),[3] 1.8 (Conflict of Interest: Current

---

[1] Rule 1.2(a) provides:

> (a)    Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. . . .

Unless otherwise indicated, all Rule references in this opinion are to the Maryland Lawyer's Rules of Professional Conduct ("MLRPC").

[2] Rule 1.3 provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

[3] Rule 1.4 provides:

> (a) A lawyer shall:

(Continued. . .)

Clients),[4] 1.16 (Declining or Terminating Representation),[5] 8.4(a), (c), and (d)

(Misconduct).[6] The Commission served Respondent on 24 January 2014 with a copy of

---

(. . . continued)

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4] Rule 1.8(a)–(b) provides:

(a) A lawyer shall not enter into a business transaction with a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction,

(Continued. . .)

2

> including whether the lawyer is representing the client in the transaction.
>
> (b) A lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

MLRPC 1.8(b), although charged in the Petition for Disciplinary or Remedial Action, was abandoned apparently by the Petitioner and not considered by the hearing judge. Although Petitioner did not withdraw formally this charged violation, no exceptions were filed with regard to the hearing judge's failure to reach a conclusion as to MLRPC 1.8(b). Accordingly, we will not consider MLRPC 1.8(b) further in this opinion. *See Attorney Grievance Commission v. McLaughlin*, 372 Md. 467, 474 n.8, 813 A.2d 1145, 1149 n.8 (2002).

[5] Rule 1.16(a) and (d) provide:

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
>
>> (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;
>> (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
>> (3) the lawyer is discharged.
>
> *                    *                    *
>
> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

(Continued. . .)

the PDRA, Writ of Summons, and Order for Hearing under Maryland Rule 16-752(a).

Respondent filed timely an Answer.

The case was assigned to a hearing judge of the Circuit Court for Baltimore City to conduct an evidentiary hearing and render findings of fact and recommended conclusions of law with regard to the charges. The hearing was conducted on 16 May 2014. Respondent was the sole witness called by Petitioner, and testified on his own behalf as well. At the conclusion of the hearing, the parties submitted proposed written findings of fact and conclusions of law. In addition, Petitioner responded to Respondent's proposed findings of fact and conclusions of law. In the hearing judge's opinion, the following factual findings were made:

> The Respondent was admitted to the Maryland Bar on 14 December 1973. He currently maintains a personal injury practice in Baltimore, Maryland, which consists of

---

(. . . continued)

MLRPC 1.16(d) was abandoned apparently by the Petitioner as well. *See supra* note 4.

[6] Rules 8.4(a), (c), and (d) provide:

> It is professional misconduct for a lawyer to:
>
> > (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> >    *       *       *
> > (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> > (d) engage in conduct that is prejudicial to the administration of justice[.]

one other practicing attorney and an administrative assistant.

In the summer of 2004, the complainant, Diane Wisniewski, underwent knee surgery at St. Agnes Hospital, which allegedly resulted in an infection. On 16 September 2005, Wisniewski retained the Respondent as counsel in order to pursue a medical malpractice suit against the hospital. The Respondent agreed to represent Wisniewski in accordance with the following fee arrangement: the Respondent would receive 33.333% of any recovery by settlement without litigation and 40% of any recovery awarded following litigation.

Respondent acquired Wisniewski's medical records and sought an expert for the purpose of filing a Certificate of Merit. Respondent testified that he forwarded Wisniewski's medical records to several doctors; however, none "seemed to be interested in getting involved." Respondent admits that he did not inform Wisniewski of the difficulty he encountered in obtaining an expert to file the Certificate of Merit.

On 13 July 2007, Respondent filed a Statement of Claim with the Health Claims Arbitration Office on behalf of Wisniewski in an effort to protect her claim from being barred by the applicable statute of limitations date. At this time, the Respondent still had not secured an expert to file the Certificate of Merit. Wisniewski's claim was subsequently dismissed by the Health Claims Arbitration Office, as no Certificate of Merit was ever submitted in support of the claim. By the time the Statement of Claim was dismissed, the statute of limitations concerning Wisniewski's claim had expired.

Respondent admits that he failed to inform Wisniewski that the Health Claims Arbitration Office had dismissed her claim and that the statute of limitations on the claim had expired. Respondent concealed this information for a period of five years following the dismissal of the claim and expiration of the statute of limitations, leading Wisniewski to believe that her claim was still active. Respondent admits that he continued his representation of Wisniewski during this time, failing to inform her of the conflict of interest that existed and her right to seek independent counsel.

5

By the fall of 2012, Respondent had still failed to inform Wisniewski of the actual status of her case and instead told her that a settlement had been reached. Respondent could not recall the amount of money for which he reported the case had settled. Respondent then met with Wisniewski regarding the fictional settlement, at which time he informed her that he did not have the money she was to receive from the settlement. As a result, Wisniewski filed a complaint with the Petitioner in late October 2012.

Respondent revealed the true status of the medical malpractice claim to Wisniewski at some point after Wisniewski filed her complaint with the Petitioner. Respondent then entered into a "settlement agreement" with Wisniewski in December of 2012. In a handwritten note, signed by the Respondent and witnessed by the Respondent's business partner and wife, Ruth M. Schaub, the Respondent agreed to pay Wisniewski a lump sum of $12,500.00, to be followed by monthly payments of $2,000. The monthly payments were set to begin on 10 January 2013 and to continue until the total of $66,000.00 was paid as "full and final settlement."

Respondent testified that, at the time of the settlement agreement, he orally informed Wisniewski of her right to seek independent counsel and offered to provide information regarding his malpractice insurance. The written agreement, however, lacks any indicia that Wisniewski gave her informed consent concerning the essential terms of the settlement agreement, Respondent's role in the agreement, or the desirability of retaining independent counsel prior to the execution of the agreement. To the extent that any informed consent may have been obtained in this regard, it was not confirmed by Wisniewski in writing anywhere in this written agreement or in the record.

Respondent testified that the $66,000.00 settlement amount is what Wisniewski would have netted had the case against St. Agnes settled for $100,000.00 (accounting for the Respondent's 1/3 attorney's fee). According to the Respondent, $66,000.00 represents what Wisniewski would have accepted as a settlement had she been successful in litigating her claim.

> Respondent testified that all payments to Wisniewski have been made timely and in accordance with the agreement.

(minor alterations added) (citations omitted). Based on his analysis, the hearing judge concluded that the Commission proved, by clear and convincing evidence, that Shapiro violated MLRPC 1.2(a), 1.3, 1.4(a) and (b), 1.8(a)(2), 1.16, and 8.4(a), (c), and (d). The hearing judge's conclusions of law with respect to each of the claimed violations will be discussed in turn below.

Petitioner filed with us a single written exception to the hearing judge's Findings of Fact and Conclusions of Law. In its exception, Petitioner argued that the hearing judge should have concluded that Petitioner proved by clear and convincing evidence that the terms of the settlement agreement were unfair or unreasonable, leading to a violation of MLRPC 1.8(a)(1). Respondent filed no exceptions, timely or otherwise.

## II. STANDARD OF REVIEW

The Court of Appeals has original jurisdiction over attorney discipline matters. *Attorney Grievance Commission v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 867 (2013). Accordingly, we "conduct an independent review of the record." *Attorney Grievance Commission v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 763 (2002). "We determine, ultimately, whether an attorney has committed the misconduct charged by the Attorney Grievance Commission." *Attorney Grievance Commission v. Maignan*, 390 Md. 287, 292, 888 A.2d 344, 347 (2005). In accordance with Maryland Rule 16-752, we refer petitions for disciplinary action to a circuit court judge to act as our hearing officer, for that judge to receive evidence and thereafter present to the Court findings of fact and

recommended conclusions of law. *See Maignan*, 390 Md. at 292–93, 888 A.2d at 347. Exceptions may be taken by the parties to the findings of fact, proposed conclusions of law, or both. If no exceptions are filed with respect to the hearing judge's findings of fact, we may "treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Md. Rule 16-759(b)(2)(A). If exceptions are filed, we must determine whether the findings of fact are clearly erroneous. Md. Rule 16-759(b)(2)(B); *see Attorney Grievance Commission v. Stolarz*, 379 Md. 387, 397, 842 A.2d 42, 47 (2004) ("We . . . accept[] the hearing judge's findings of fact unless clearly erroneous.").

When assessing the hearing judge's findings of fact, we "give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Md. Rule 16-759(b)(2)(B). We review the judge's recommended conclusions of law without deference, a standard referred to sometimes as *de novo*. Md. Rule 16-759(b)(1); *see Attorney Grievance Commission v. Greenleaf*, 438 Md. 151, 156, 91 A.3d 1066, 1069 (2014) ("In an attorney discipline proceeding, this Court reviews for clear error the hearing judge's findings of fact, and reviews without deference the hearing judge's conclusions of law."); *Attorney Grievance Commission v. Moeller*, 427 Md. 66, 73, 46 A.3d 407, 411 (2012) ("With respect to a hearing judge's conclusions of law, no deference applies and we review those conclusions *de novo*."); *Attorney Grievance Commission v. Patterson*, 421 Md. 708, 724, 28 A.3d 1196, 1205 (2011).

Inasmuch as no party filed exceptions to the factual findings of the hearing judge, we accept them as established. We turn then to consideration of the recommended conclusions of law and sanction, if necessary.

### III. DISCUSSION

#### A. *MLRPC 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer)*

MLRPC 1.2(a) provides:

> (a)　　Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. . . .

The hearing judge concluded, by clear and convincing evidence, that Respondent violated Rule 1.2 "because Respondent's failure to inform [Wisniewski] that her claim before the Health Claims Arbitration Office had been dismissed and that the statute of limitations had expired deprived [Wisniewski] of her ability to make an informed decision as to the objectives of the representation."

In order for a lawyer to abide by a client's decisions concerning the objectives of the representation, the client must be able to make informed decisions as to the objectives of the representation. In order for a client to make informed decisions as to the objectives of the representation, an attorney must give the client honest updates regarding the status of his or her case. In *Attorney Grievance Commission v. Sperling*, an attorney violated MLRPC 1.2 when he failed to inform (for several years) a client that her case had been

9

dismissed. 432 Md. 471, 493, 69 A.3d 478, 491 (2013). In that matter, an associate attorney in a law firm was assigned responsibility for a client's case and tasked with attending pre-trial conferences, drafting discovery, and engaging and interacting with a process server. *Sperling*, 432 Md. at 475, 69 A.3d at 480. The defendant in the matter was never served with the initial complaint, resulting in dismissal of the suit. *Id.* Two years later, Sperling's father, a partner in the law firm, filed a Motion for Reconsideration of Dismissal, which was granted. *Id.* The defendant, yet to be served, failed to appear at three pre-trial conferences. *Id.* The case was dismissed again. *Sperling*, 432 Md. at 475–76, 69 A.3d at 480. The attorney did not inform his client of either dismissal. *Id.* Eight years after the second dismissal—and almost ten years after the firm took the case originally—the client emailed Sperling to inquire about the status of her case. *Sperling*, 432 Md. at 476, 69 A.3d at 480. He responded by assuring his client that the case was "still making its rounds with the [court] clerk and she assures me she is working on it," but did not tell her that her case had been dismissed. *Id.*

The attorney argued that this conduct did not violate MLRPC because any alternative or choice that the client would have had after the case had been dismissed would not have led to a successful outcome for her. *Sperling*, 432 Md. at 493, 69 A.3d at 491. We held that MLRPC 1.2(a) "does not require that a client's decision regarding the objectives of the representation necessarily result in a successful outcome. It was [the client's] choice that was offended by [Sperling's] failure to inform her of the dismissal." *Id.* Accordingly, we found that MLRPC 1.2(a) was violated. *Id.*

In at least three other modern cases, attorneys violated MLRPC 1.2(a) by failing to inform clients of the status of their cases. *Attorney Grievance v. Davy*, 435 Md. 674, 80 A.3d 322 (2013); *Attorney Grievance Commission v. Brown*, 426 Md. 298, 44 A.3d 344 (2012); *Attorney Grievance Commission v. Reinhardt*, 391 Md. 209, 892 A.2d 533 (2006). In *Reinhardt*, the attorney took a case, and filed a complaint on behalf of his client, but failed to serve the defendant with the summons. *Reinhardt*, 391 Md. at 215, 892 A.2d at 536. Approximately six months later, the client inquired as to the status of her case. *Id.* The attorney did not respond, but instead put the file in a briefcase, and later put the briefcase in a closet, not realizing that he had left the file in the briefcase. *Id.* He did not respond to the client's repeated inquiries, nor did he take any actions to prevent the dismissal of the lawsuit. *Reinhardt*, 391 Md. at 215–16, 892 A.2d at 536–37. The attorney did not conduct an "aggressive" search for the lost file for approximately four years. *Reinhardt*, 391 Md. at 216, 892 A.2d at 537. When he located the file, he did not tell his client that he had misplaced it and took no action on her case in four years, but rather indicated in a letter to the client that there was an "issue" securing service on the Defendants. *Reinhardt*, 391 Md. at 216–17, 892 A.2d at 537. We concluded that this behavior constituted a violation of Rule 1.2(a) as the attorney "fail[ed] to follow the client's instruction to pursue [her] case and inform her of the status of the case." *Reinhardt*, 391 Md. at 220, 222, 892 A.2d at 539–40.

The misconduct in *Brown* "mirror[ed] closely" the misconduct in *Reinhardt*. *Brown*, 426 Md. at 320, 44 A.3d at 357. In *Brown*, two cases were dismissed for lack of

11

prosecution. *Id.* The attorney failed to inform his clients of those dismissals and ignored their repeated requests for information. *Id.*

In *Davy,* an attorney filed a complaint on behalf of a client in the after-hours filing box at the U.S. District Court for the District of Columbia. *Davy*, 435 Md. at 685, 80 A.3d at 328. The federal court mailed a rejection of the complaint to the attorney, explaining that the complaint was rejected because the attorney failed to renew her membership in the federal court's bar, and also failed to include a cover sheet, summons, and disc with the complaint. *Davy*, 435 Md. at 686, 80 A.3d at 328. The attorney called the federal court about the rejection of the complaint and spoke with three people regarding the rejection, but nonetheless emailed her client telling her that the complaint had been filed on time and suggested further that the summons was about to be issued and would be served subsequently. *Davy*, 435 Md. at 686–87, 80 A.3d at 329. A few weeks later, the client visited the federal court personally, and was told that there was no case pending in her name. *Davy*, 435 Md. at 687, 80 A.3d at 329. The attorney continued to work on the matter even though the client accused the attorney of breaking their agreement and requested her money back. *Davy*, 435 Md. at 688–89, 80 A.3d at 329–30. Such behavior violated MLRPC 1.2(a). *Davy*, 435 Md. at 699, 80 A.3d at 336.

We agree with the hearing judge that Shapiro's conduct violated MLRPC 1.2(a) as he failed to keep Wisniewski informed as to the status of her case and, accordingly, deprived her of the opportunity to make informed decisions as to the objective of the representation. In our view, his sustained deceit surpasses the grievous MLRPC 1.2

12

violations of the attorneys in *Reinhardt*, *Brown*, and *Davy* and rivals that of the attorney in *Sperling*.

## B. MLRPC 1.3 (Diligence)

MLRPC 1.3 provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

The hearing judge concluded, by clear and convincing evidence, that Respondent violated Rule 1.3

> as a result of his failure to promptly act after learning that the Health Claims Arbitration Office dismissed Wisniewski's claim and that the statute of limitations had run. While the Respondent could have attempted to reopen the case, researched whether there were means of legally circumventing the running of the statute of limitations, investigated whether there was a basis for asserting that the statute of limitations had not tolled, or at the least, informed Wisniewski of the situation, he instead chose to do nothing but hide the true status of the case from Wisniewski, a clear violation of Rule 1.3.

(minor alterations added) (citations omitted).

The "decision to do nothing promptly when [an attorney] learn[s] the case was dismissed" violates MLRPC 1.3. *Sperling*, 432 Md. at 491, 69 A.3d at 489. In *Sperling*, when an attorney learned that his client's case had been dismissed, he failed to file immediately a motion to reopen; neither did he research whether there were means to circumvent legally the running of the statute of limitations, nor investigate whether there was another basis for arguing that the statute of limitations had not tolled. *Id.* His failure to take those steps constituted a violation of MLRPC 1.3. *Id.* Moreover, a failure to

protect against the expiration of the statute of limitations regarding a client's claim may violate MLRPC 1.3. *Brown*, 426 Md. at 321, 44 A.3d at 358. In *Brown*, two clients' law suits were dismissed due to the attorney's "laggard representation." *Id.* Prior to the dismissal of their suits, the applicable statute of limitations expired on the claims. *Id.* The failure to take active steps to protect against such an outcome constituted a violation of MLRPC 1.3. *Id.* Also, in *Kremer*, where clients were unable to learn of the status of their case after repeated attempts to reach their attorney, we held that the failure to keep one's client informed of his or her case violates MLRPC 1.3 and 1.4. 432 Md. at 335–36, 68 A.3d at 868–69; *see Attorney Grievance Commission v. Walker-Turner*, 428 Md. 214, 229, 51 A.3d 553, 562 (2012) ("Walker-Turner violated MLRPC 1.3 also by failing to ascertain the status of his clients' case after he missed the trial."); *Attorney Grievance Commission v. Park*, 427 Md. 180, 192–93, 46 A.3d 1153, 1160 (2012) (holding that a lawyer's failure to keep clients informed as to the status of the applications and his failure to respond to the clients' inquiries violated MLRPC 1.3).

In the present case, Respondent violated MLRPC 1.3 by failing to act more promptly to prevent the dismissal of Wisniewski's claim or to reinvigorate the case by some other means. Respondent did not protect adequately Wisniewski's claim from expiring due to the running of the applicable statute of limitations. Finally, Respondent failed to advise Wisniewski of his apparent inability to find a willing doctor, such that Wisniewski could make decisions or assist with regard to locating a willing doctor before her claim lapsed. These shortcomings violate MLRPC 1.3.

## C. MLRPC 1.4 (Communication)

MLRPC 1.4 provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded, by clear and convincing evidence, that Respondent violated Rule 1.4 based on his

failure to inform Wisniewski that her claim had been dismissed, along with the continued misrepresentation over a five year period that the case was open and being pursued, constitutes a violation of Rule 1.4(a) and (b). Furthermore, Respondent failed to inform Wisniewski that he was having difficulty in retaining an expert for the purpose of filing a Certificate of Merit. His failure to keep her informed deprived her of the opportunity to seek other counsel who may have had success in procuring a Certificate of Merit.

(minor alterations added) (citations omitted).

Attorneys violate MLRPC 1.4 when they fail to communicate with their clients and keep them informed of the status of their legal matters. *Attorney Grievance*

*Commission v. Kwarteng*, 411 Md. 652, 658, 660, 984 A.2d 865, 868–69 (2009). The misrepresentation of the status of a case to a client constitutes a violation of MLRPC 1.4(a). *Sperling*, 432 Md. at 494, 69 A.3d at 491; *Attorney Grievance Commission v. London*, 427 Md. 328, 352, 47 A.3d 986, 1000 (2012); *Attorney Grievance v. Steinberg*, 395 Md. 337, 368–69, 910 A.2d 429, 447–48 (2006). The attorney in *Sperling* concealed from his client the fact that her case had been dismissed, instead misrepresenting to the client that her case was being pursued. *Sperling*, 432 Md. at 494, 69 A.3d at 491. Such behavior violated MLRPC 1.4(a). *Id.*; *see Brown*, 426 Md. at 321–22, 44 A.3d at 358 (violating MLRPC 1.4(a) by failing to notify various clients of discovery sanctions and the dismissal of a claim, as well as by failing to respond to case-status requests). MLRPC 1.4(b) is violated similarly by a lack of communication, as clients are unable to make informed decisions regarding their cases if their attorney has not communicated fully with them. A failure to inform a client about a pending or granted motion to dismiss violates MLRPC 1.4(b), as clients are denied the opportunity to make informed decisions regarding the best course of conduct for their claims. *Sperling*, 432 Md. at 494, 69 A.3d at 491; *see Attorney Grievance Commission v. De La Paz*, 418 Md. 534, 554, 16 A.3d 181, 193 (2011) (violating MLRPC 1.4 by failing to inform a client that the case had been dismissed), *Attorney Grievance Commission v. Fox*, 417 Md. 504, 517, 532, 11 A.3d 762, 769, 778 (2010) (violating MLRPC 1.4 by not knowing that a client's case was dismissed and accordingly not communicating that fact to the client).

Respondent violated MLRPC 1.4 by failing to communicate with Wisniewski and by misrepresenting actively to her for years that her claim was active and still being

16

pursued.  She was unable to make an informed decision regarding her representation because Respondent did not present her with relevant and critical information.

### D. MLRPC 1.8 (Conflict of Interest: Current Clients: Specific Rules)

MLRPC 1.8(a) provides:

> (a) A lawyer shall not enter into a business transaction with a client unless:
>
> > (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> > (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
> > (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

With regard to MLRPC 1.8, the hearing judge concluded, by clear and convincing evidence, that Respondent

> violated Rule 1.8 as a result of his settlement arrangement with Wisniewski.  While the Respondent was not prohibited outright from entering into this kind of arrangement with Wisniewski, Respondent was required to inform Wisniewski in writing of the desirability of seeking independent counsel prior to entering into a settlement agreement with Respondent.  While Respondent testified that he orally advised Wisniewski, there is no indication in the record, nor does Respondent anywhere assert, that Wisniewski was ever given written notice.  The record is similarly lacking indicia that Wisniewski gave her informed consent in writing, as

17

required by paragraph (a)(3) and in accordance with Rule 1.0(f).[7] . . . [N]o writing exists in which Wisniewski gives her informed consent to the agreement. The only writing offered to this Court pertaining to the settlement arrangement was Respondent's Exhibit 5, an agreement handwritten by the Respondent and signed only by the Respondent and his business partner.

(minor alterations added) (citations omitted).

## 1. MLRPC 1.8(a)(2)'s Written Disclosure Requirement

The parties disagreed in their proposed findings of fact and conclusions of law as to the scope and level of detail that would have been necessary in a theoretical disclosure for Respondent to have acted in accordance with MLRPC 1.8. The hearing judge felt (appropriately) that it was not necessary to address that issue, as there was, in fact, no disclosure in writing of any kind. Thus, we are not compelled to define here the lowest threshold for what may constitute an appropriate disclosure. What is appropriate for us to iterate (or reiterate, put more correctly) as guidance is that the transaction and terms of such a business transaction must be "fair and reasonable . . . [and] fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client." MLRPC 1.8(a)(1); *see Attorney Grievance Commission v. Ober*, 350 Md. 616, 627–28, 714 A.2d 856, 862 (1998) ("We need not address the fairness of the transactions to [the

---

[7] Rule 1.0(f) provides:

"Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

client] as [r]espondent did not advise [the client] to seek the advice of independent counsel with regard to the loan as required by [an older iteration of MLRPC 1.8].").

MLRPC 1.8 "is intended to prevent 'overreaching' when a lawyer engages in a financial transaction with a client, given a lawyer's skill and training and the relationship of trust with a client." *Attorney Grievance Commission v. Lawson*, 428 Md. 102, 115, 50 A.3d 1196, 1203 (2012). In *Lawson*, an attorney and his client entered into a settlement agreement concerning a disputed attorney's fee, which gave the attorney a lien on the proceeds of the client's marital property settlement. *Id.* The client had poor eyesight and was unable to understand the relevant law or "legalese" of the agreement itself. *Id.* The client was not advised of the desirability of seeking independent counsel, nor was he given an opportunity to do so and, accordingly, the client did not give informed consent, written or otherwise, to the essential terms. *Id.* Lawson violated MLRPC 1.8 as a result. *Id.* In *Steinberg*, an attorney violated MLRPC 1.8 when he sought to have his client, without the assistance of independent counsel, execute a release of any legal malpractice claims against the attorney. 395 Md. at 365, 910 A.2d at 445. He neither advised her of the desirability of obtaining counsel, nor did he allow her to do so: when she entered the room for a meeting with counsel a "Release in Full" was sitting on the table, ready to be signed. *Id.*

We agree with the hearing judge that Respondent violated MLRPC 1.8 by not advising Wisniewski in writing of the desirability of seeking independent counsel prior to entering into the agreement with Respondent. Any advice that may have been given

orally by Respondent falls well short of satisfying the clear requirements of MLRPC 1.8(a)(2).

2. MLRPC 1.8(a)(1)'s "Fair and Reasonable" Requirement

Petitioner argued implicitly in its proposed findings of fact and conclusions of law that the facial terms of the settlement agreement were a violation of MLRPC 1.8(a)(1). The hearing judge declined to conclude that the terms of the settlement agreement constituted an additional, independent violation of MLRPC 1.8(a)(1). He refrained from reaching such a conclusion of law because:

> [T]here is insufficient information on the record from which to evaluate whether the terms of the settlement agreement were unfair or unreasonable to Wisniewski. Petitioner offered no evidence as to the specific nature or potential value of Wisniewski's medical malpractice claim against St. Agnes Hospital, and therefore, the Court has no objective basis on which to make its determination on this theory.

(minor alterations added).

Petitioner took exception to the judge's conclusion that Bar Counsel failed to meet its burden of proving, by clear and convincing evidence, that the terms of the settlement agreement were unfair or unreasonable to Wisniewski, in violation of MLRPC 1.8(a)(1). Petitioner based its exception on "the inherent unfairness concerning the benefit Respondent received from the settlement of a claim that arose from his mishandling of that client's case." Bar Counsel argues that there was sufficient evidence to compel the hearing judge to conclude that the terms of the settlement agreement were unfair patently in a way that violated MLRPC 1.8(a)(1). Bar Counsel rests its argument on three facts: (1) Respondent took a 1/3 attorney's fee from the settlement for services that, according

to Petitioner, he did not perform; (2) the agreement capped Respondent's liability to Wisniewksi as a "full and final settlement," without including provisions as to the pay-out period for interest or other consideration for interest-free repayments; and (3) the lack of written evidence of Wisniewski's informed consent, confirmed in writing.

Petitioner argues in its exception that it satisfied the initial burden of making a prima facie showing that the Respondent entered into an unfair business transaction with his client and, thus, it became Respondent's burden to demonstrate in his case-in-chief at trial that, notwithstanding the facts and provisions mentioned above, the settlement was fair and reasonable. As Petitioner sees it, because no such evidence was produced at trial by Respondent, the hearing judge was wrong not to have concluded that Respondent violated MLRPC 1.8(a)(1) based on the terms of the settlement agreement alone.

Pursuant to Maryland Rule 16-757(b), Petitioner "has the burden of proving the averments of the petition by clear and convincing evidence." We have not had much occasion previously to discuss in any depth, with regard to MLRPC 1.8(a)(1), the burdens of production and proof regarding whether agreements between attorneys and clients are fair and reasonable. We have noted that, when attorneys and clients enter into contracts, "'the law makes a presumption against the attorney and in favor of the client. In such cases the *onus* is on the attorney to prove the entire *bona fides* and fairness of the transaction.'" *Attorney Grievance Commission v. Korotki*, 318 Md. 646, 666, 569 A.2d 1224, 1234 (1990) (quoting *Merryman v. Euler*, 59 Md. 588–90 (1883)). In questions regarding whether the transaction and terms of a business transaction with a client are fair and reasonable to the client:

21

> [T]he attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.

*Attorney Grievance Commission v. McLaughlin*, 372 Md. 467, 506, 813 A.2d 1145, 1168 (2002) (quoting *Attorney Grievance Commission v. Snyder*, 368 Md. 242, 265–66, 793 A.2d 515, 529 (2002)).[8]   The attorney bears also "a significant burden to prove the fairness of an agreement concerning fees made with his client after services have been rendered in the course of the confidential relationship of attorney and client."  *Attorney Grievance v. Eisenstein*, 333 Md. 464, 478, 635 A.2d 1327, 1334 (1994).  In situations where the client has not been "advised in writing of the desirability of seeking and [was not] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction," MLRPC 1.8(a)(2), we presume that the agreement between the attorney and client is not a fair and reasonable one.  Respondents may overcome this presumption

---

[8] In *McLaughlin*, the respondent violated an earlier iteration of MLRPC 1.8 based on the standard terms of his fee agreement, which created loan agreements, when his clients were not advised that they should seek the advice of separate counsel.  372 Md. 467, 813 A.2d 1145.  The earlier iteration of MLRPC 1.8 provided:

> A lawyer shall not enter into a business, financial or property transaction with a client unless: (1) the transaction is fair and equitable to the client; and (2) the client is advised to seek the advice of independent counsel in the transaction and is given a reasonable opportunity to do so.

*McLaughlin*, 372 Md. at 505, 813 A.2d at 1167–68.

by adducing a prima facie case that the agreement is fair and reasonable, despite the lack of a written disclosure.

In this matter, the hearing judge was disinclined to find a separate violation of 1.8(a)(1) based on the state of the record before him.  Based on the record and in light of the guidance provided above, we need not determine here whether the terms and conditions of the agreement between Respondent and Wisniewski were fair and reasonable.  Petitioner's exception is moot, as the hearing judge concluded previously— and we agree—that Respondent violated clearly MLRPC 1.8(a)(2) by not providing Wisniewski with an appropriate written disclosure.  This became a violation of MLRPC 1.8(a), in and of itself, as the sub-parts of MLRPC 1.8(a) are expressed in the conjunctive.  Thus, as charged in the PDRA, Shapiro was found to have violated MLRPC 1.8(a).  The unit of prosecution under MLRPC 1.8(a) is but a single unit as regards a single transaction, regardless of whether all or any one of sub-parts (1), (2), and/or (3) are proven.

*E. MLRPC 1.16 (Declining or Terminating Representation)*

MLRPC 1.16(a) provides:

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
>
> (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;
> (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
> (3) the lawyer is discharged.

The hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 1.16 by "failing to withdraw as counsel once he became aware that the statute of limitations had run on Wisniewski's medical malpractice claim."

Attorneys must withdraw from representation of a client once their interests become "untenably at odds with [their] client[s']." *Attorney Grievance v. Bleecker*, 414 Md. 147, 173, 994 A.2d 928, 943 (2010). In *Bleecker*, the attorney filed accidentally a complaint averring that the date an accident occurred was one year later than the actual date. *Bleecker*, 414 Md. at 159, 994 A.2d at 935. After he discovered the mistake, and realized that the applicable statute of limitations expired actually, he failed to inform her of his mistake. *Id.* Nonetheless, he continued to represent the client on other matters. *Bleecker*, 414 Md. at 173, 994 A.2d at 943. We concluded that the attorney "was obligated to withdraw from the representation, when he became aware that the statute of limitations had expired," and he was also "obligated to advise [his client] to seek independent counsel concerning a potential malpractice claim." *Id.*; *see Attorney Grievance Commission v. Pennington*, 387 Md. 565, 581, 595, 876 A.2d 642, 651, 660 (2005) (violating MLRPC 1.16(a)(1) by "fail[ing] to withdraw from representation of [her clients] after her representation gave rise to their cause of action against her"). Like the attorneys in *Bleecker* and *Pennington*, Respondent failed to withdraw immediately after learning of the potential cause of action that Wisniewski may have had against him. This ethical lapse violated MLRPC 1.16.

24

## F. MLRPC 8.4 (Misconduct)

MLRPC 8.4(a), (c), and (d) provide:

> It is professional misconduct for a lawyer to:
>
> > (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> >
> > *                *                *
> >
> > (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> > (d) engage in conduct that is prejudicial to the administration of justice[.]

In light of his conclusions that Respondent violated MLRPC 1.2, 1.3, 1.4(a) and (b), 1.8(a), and 1.16, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 8.4(a). The hearing judge concluded further that Respondent violated MLRPC 8.4(c) and (d):

> By his own admission, Respondent concealed from Wisniewski the true status of her medical malpractice case from late 2007 until late 2012. In these five years, Respondent led Wisniewski to believe that her case was active and being pursued by the Respondent. Respondent went even further in misleading Wisniewski in the fall of 2012, when he informed her that the case had been settled when no such settlement had occurred. Such action constitutes a clear violation of paragraph (c) of the Rule. Finally, . . . Respondent violated Rule 8.4(d) by neglecting to keep Wisniewski informed about the status of her case and to perform his duty as counsel with promptness and diligence. Such conduct is prejudicial to the administration of justice, as it "tends to bring the legal profession in disrepute."

(minor alterations added) (citations omitted) (quoting *Brown*, 426 Md. at 324–25, 44 A.3d at 360 (quoting *Attorney Grievance Commission v. Rose*, 391 Md. 101, 111, 892 A.2d 469, 475 (2006))).

The hearing judge noted appropriately that MLRPC 8.4(a) is violated when other Rules of Professional conduct are breached. *See Attorney Grievance Commission v. Van Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012). As Respondent violated MLRPC 1.2, 1.3, 1.4, 1.8, and 1.16, he violated MLRPC 8.4(a) as well.

MLRPC 8.4(c) "prohibits an attorney from, among other things, making misrepresentations to his or her client." *Brown*, 426 Md. at 323, 44 A.3d at 359. In *Brown*, the respondent told his client that her case was still pending in arbitration when in fact it had been dismissed for two years. *Brown*, 426 Md. at 324, 44 A.3d at 359–60; *see Bleecker*, 414 Md. at 169, 994 A.2d at 941 (finding a violation of MLRPC 8.4(c) where an attorney led his client to believe that her case had not been dismissed). Direct misrepresentations, such as the one that Respondent in this matter made to Wisniewski when he led her to believe that her case was still active, violate MLRPC 8.4(c). The attorney in *Brown* misrepresented the status of a client's case several times to the client, *Brown*, 426 Md. at 324, 44 A.3d at 360, much as Respondent in this matter continued to misrepresent the status of Wisniewski's case to her for approximately five years.

Attorneys violate MLRPC 8.4(d) when they fail to keep their clients advised of the status of the representation and represent diligently their clients' interests. *See Bleecker*, 414 Md. at 175, 994 Md. at 944–45. The hearing judge noted rightly that such conduct is

26

prejudicial to the administration of justice in that it tends to bring the legal profession into disrepute. *See Reinhardt*, 391 Md. at 222, 892 A.2d at 540–41.

## IV. SANCTION

We now turn to the difficult and serious task of determining the appropriate sanction. Where, as here, MLRPC 8.4(c) is the flagship of a flotilla of violations, our cases of arguably similar ilk are strewn over the sanctions landscape. Petitioner recommends that Respondent be disbarred. Respondent argues that a less severe sanction is more appropriate.

We commence by noting some general principles, and shall work from them to specific cases. The chief purpose of any sanction is to protect the public. *Attorney Grievance v. Chapman,* 430 Md. 238, 277, 60 A.3d 25, 49 (2013); *Park*, 427 Md. at 195, 46 A.3d at 1161; *Attorney Grievance Commission v. Paul*, 423 Md. 268, 283, 31 A.3d 512, 521 (2011); *Attorney Grievance Commission v. Culver*, 371 Md. 265, 277, 808 A.2d 1251, 1258 (2002). Sanctions protect the public in two ways: "through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Attorney Grievance Commission v. Usiak*, 418 Md. 667, 689, 18 A.3d 1, 14 (2011) (quoting *Attorney Grievance Commission v. Mahone*, 398 Md. 257, 268–69, 920 A.2d 458, 465 (2007)). Disciplinary proceedings are

> a catharsis for the profession, intended to ensure the integrity
> of the bar and to prevent the transgressions of an individual
> lawyer from bringing its image into disrepute. Therefore, the
> public interest is served when sanctions designed to effect
> general and specific deterrence are imposed on an attorney who

27

> violates the disciplinary rules, and those sanctions demonstrate to members of the legal profession the type of conduct that will not be tolerated.

*Brown*, 426 Md. at 325, at 360–61 (quoting *Paul*, 423 Md. at 283–85, 31 A.3d at 521–22). Sanctions are also designed to effect general and specific deterrence. *Attorney Grievance Commission v. Litman*, 440 Md. 205, 216, 101 A.3d 1050, 1057 (2014); *see Attorney Grievance Commission v. McDonald*, 437 Md. 1, 45, 85 A.3d 117, 143 (2014) ("Our guiding principle in determining sanctions for ethical violations is our interest in protecting the public and the public's confidence in the legal profession." (internal quotations omitted)). We look not merely to the number of rules broken, but to the lawyer's conduct. *See Attorney Grievance Commission v. Briscoe*, 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000). "Our selection of an appropriate sanction is guided by the nature and gravity of the violation, the intent with which the violation was committed, and the particular circumstances surrounding each case, including aggravating and mitigating factors." *Park*, 427 Md. at 195, 46 A.3d at 1161.

We recognize that, while "[m]ost lawyers prize their integrity . . . . [h]uman frailty being what it is, not all lawyers tell the truth all the time. It falls to this Court in its capacity as the principal regulator of the legal profession in Maryland to distinguish those untruths that violate the MLRPC from those that do not." *Attorney Grievance Commission v. Coppock*, 432 Md. 629, 631–32, 69 A.3d 1092, 1093 (2013). In cases where an attorney's repeated material misrepresentations constitute a pattern of deceitful conduct, as opposed to but an isolated instance, the appropriate sanction is often disbarment. *See Steinberg*, 395 Md. at 373, 910 A.2d at 450 ("We long have held that

repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment."). "We have not, however, always found disbarment to be the appropriate sanction where there is misrepresentation involved, especially where misappropriation of money was not involved." *Attorney Grievance Commission v. Lane*, 367 Md. 633, 646–47, 790 A.2d 621, 628 (2002); *see Sperling*, 432 Md. at 491, 493, 497–98, 69 A.3d at 489, 491, 493–94; *Reinhardt*, 391 Md. at 225, 892 A.2d at 542 ("Every misrepresentation, however, does not call for disbarment.").

*Attorney Grievance Commission v. Sperling* resembles most closely the facts and circumstances of the present case. 432 Md. 471, 69 A.3d 478. In *Sperling*, after a client's case was dismissed, Sperling failed to research whether there was any way to avoid the running of the statute of limitations or whether there was a tolling argument, but instead, two years later, he and his supervising partner filed two motions to reopen (neither of which was successful). *Sperling*, 432 Md. at 475–76, 491, 69 A.3d at 480, 489. The respondent did not tell his client that her case had been dismissed initially, or that the motions to reopen had been filed. *Id.* Eight years after the case was dismissed a second time, when the client inquired as to the status of her case, the respondent told her that the case was still active and that the court clerk was working on it. *Id.*

Sperling's misrepresentations were not limited to the client. Sperling made material misrepresentations to the court when he told a judge that he had contacted the court clerk several times to discover the status of the case when he in fact had not. *Sperling*, 432 Md. at 491–92, 69 A.3d at 490. He submitted motions and affidavits to the court repeating these misrepresentations. *Id.* We determined that the respondent made

29

those misstatements to the court in an attempt to mislead the court into granting the motions to reopen. *Id.* We noted several aggravating factors in *Sperling*: the attorney lied to the court in order to "place blame on others [the court clerk]," he lied multiple times to multiple parties, he testified falsely during an evidentiary hearing before the circuit court, and he downplayed consistently the significance of his misrepresentations to his client and the court. *Sperling*, 432 Md. at 496–97, 69 A.3d at 492–93. We concluded that an indefinite suspension was the appropriate sanction. *Sperling*, 432 Md. at 498, 69 A.3d at 494. ("[The respondent's] misconduct involved one case and one client, but was marred by his lack of competence, diligence, and lack of candor with his client and the court, certainly grievous actions."); *see Attorney Grievance Commission v. Brown*, 415 Md. 269, 278–79, 281–82, 999 A.2d 1040, 1046–48 (2010) (suspending an attorney for 90 days who was dishonest deliberately on three separate occasions to his client and Bar Counsel, misrepresented actions that he had taken on a client's case, and mishandled client funds, but had no previous instances of misconduct, did not use the client funds for personal gain, and took responsibility for his actions ultimately, helping a third party with remediation efforts free-of-charge). *But see Bleecker*, 414 Md. at 169–76, 994 A.2d at 941–45 (disbarring an attorney where the case was dismissed and he missed the statute of limitations deadline on a client's claim, but did not tell the client, did not withdraw from representation once a conflict of interest arose between himself and his client, failed to cooperate with Bar Counsel, and failed to correct a material mistake on pleadings filed with the court). In the present case, Shapiro misrepresented to Wisniewski the true status of her case for five years before telling her that her case had "settled." Although Shapiro

30

violated also MLRPC 1.8, his misrepresentations to Wisniewski were for a shorter period of time than those in *Sperling*; he made no misrepresentations to a court; and has not attempted to downplay the significance of his violations.

We deemed indefinite suspension appropriate also where an attorney acted dishonestly and made misrepresentations to his client out of "absolute embarrassment." *Reinhardt*, 391 Md. at 223–24, 892 A.2d at 541. Reinhardt told his client that he was working on the client's case when actually he had lost the file and had taken no action on the matter. *Reinhardt*, 391 Md. at 222, 892 A.2d at 540. Four years passed before the attorney found the file and concealed the delay by indicating to the client that there had been an "issue" securing service on the defendants. *Reinhardt*, 391 Md. at 216–17, 892 A.2d at 537. We characterized his actions as "dishonest," in the sense that the "respondent exhibited a lack of probity, integrity and straightforwardness." *Reinhardt*, 391 Md. at 222, 892 A.2d at 540. We noted at the outset that "lying to a client reflects most negatively on the legal profession. It goes without saying that a lawyer should not lie to the client about the status of the client's case." *Reinhardt*, 391 Md. at 225, 892 A.2d at 542. Reinhardt's sanction was an indefinite suspension, however, because he cooperated fully with Bar Counsel, negotiated a restitution plan, and worked with the client to settle the underlying matter. *Reinhardt*, 391 Md. at 224, 892 A.2d at 541. Even though there was an aggravating consideration, i.e., Reinhardt had been suspended indefinitely previously, we concluded that disbarment was not warranted as there was "no evidence that he acted out of fraudulent or selfish motive." *Reinhardt*, 391 Md. at 223–24, 230 n.4, 892 A.2d at 541, 545 n.4. Because no misappropriation of funds nor

31

criminal conduct were implicated, and the misconduct related to but one client in a single case context, we determined that an indefinite suspension was appropriate. *Id.* In the present matter, Shapiro's misrepresentations similarly related to one client and one case, although spread over several years. Respondent's settlement with Wisniewski, although handled improperly, indicated a willingness to attain some sort of restitution.

Even when an attorney's misconduct is committed with respect to more than one client, an indefinite suspension is sometimes appropriate. In *Attorney Grievance Commission v. Harrington*, an attorney failed to pursue two matters that he undertook, failed to comply with reasonable requests for information from one client, and failed to keep the other informed reasonably regarding the status of the case. 367 Md. 36, 47–48, 785 A.2d 1260, 1266–67 (2001). He terminated also a client relationship without taking steps to protect the client's interests, and was very uncooperative with Bar Counsel. *Id.* And even though he led one of his clients to believe that he filed a suit on her behalf when in fact he had not, we concluded that an indefinite suspension was appropriate. *Harrington*, 367 Md. at 51, 785 A.2d at 1269. In comparison, Respondent in the present case failed to file a Certificate of Merit, failed to keep Wisniewski informed as to the true status of her case, and violated MLRPC 1.8, but cooperated with Bar Counsel.

Because we "evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved," *Bleecker*, 414 Md. at 176, 994 A.2d at 945, we have not aspired to set out or suggest a formula or rubric to determine what an attorney's sanction will be based on various combinations of violations of the MLRPC. Such an aspiration would be unrealistic, given the need to tailor a sanction to the

32

particular facts and circumstances of each case. We observe generally, however, that we tend to favor disbarment when attorneys' misrepresentations and deceitful actions are committed against multiple clients, are paired with violations of the rules pertaining to the proper handling of client or third party money or property, or are joined with a large number of other violations (whether of the MLRPC or the Maryland Code).

The respondent in *Lane*, whose misconduct was committed against two clients, committed himself to a snowballing lie of "the most egregious nature." *Lane*, 367 Md. at 647, 790 A.2d at 629. Lane took no action on a client's case and filed no pleadings of any kind, yet told his client that a summons had been issued for the opposing party. *Lane*, 367 Md. at 638–39, 790 A.2d at 623–24. He met his client at the courthouse and told his client that the opposing party failed to appear. *Id.* Lane then took his leave by pretending to have a meeting with the judge, and returned to inform falsely his client that the judge would rule in his favor. *Id.* He claimed later that the opposing party had filed a "stay." *Id.* With respect to another client, the respondent did not communicate properly the terms of their fee arrangement, paid some of the client's bills from his own funds, and did not file appropriate pleadings in order to secure an injunction against a utility threatening to turn off the client's water service. *Lane*, 367 Md. at 639–40, 790 A.2d at 624. Instead, he claimed to have filed a motion for sanctions against the water company for turning off the client's water ultimately, and then paid his client a sum of money that he said came from the company as a result of the sanctions action, but in reality came from his own pocket. *Id.* Finally, he told the same client that he filed a motion for summary judgment, which was granted, resulting in an award to her of over 11 million

33

dollars. *Lane*, 367 Md. at 640, 790 A.2d at 625. She was told to come to the courthouse with a suitcase and personal security to carry the cash home. *Id.* When she arrived at the courthouse, he confessed that he had misled her completely regarding the status of her lawsuit and that no money was forthcoming. *Id.* It is of little surprise that Lane was disbarred. *Lane*, 367 Md. at 647–48, 790 A.2d at 629. Although the lies of the Respondent in the present case are serious, they are not as extreme as those uttered by the attorney in *Lane*.

In *Brown*, the attorney committed various acts of misconduct with respect to four clients. 426 Md. at 305–06, 44 A.3d at 349. He failed to pursue a client's claims in a timely manner, which resulted in the statute of limitations expiring before the case was dismissed for a failure to prosecute. *Brown*, 426 Md. at 320–21, 44 A.3d at 358. The attorney failed also to answer discovery requests and incurred sanctions in another client matter. *Id.* Brown did not inform his clients about the dismissal or the sanctions and further ignored repeated requests for information from another client. *Brown*, 426 Md. at 320–22, 44 A.3d at 357–59. Brown did not return documents in his case file to a client in a timely manner, and also did not respond to two information request letters from Bar Counsel. *Brown*, 426 Md. at 322–23, 44 A.3d at 359. Such conduct violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.16, 3.2, and 8.1(b). *Brown*, 426 Md. at 326, 44 A.3d at 361. We held also that the manner in which Brown misled his client violated MLRPC 8.4(c), as Brown told one of his clients that the case was pending in arbitration, when in reality it had been dismissed two years previously. *Brown*, 426 Md. at 324, 44 A.3d at 359–60. Given the "gravity and pervasiveness" of Brown's misconduct, we concluded that the appropriate

34

sanction was disbarment. *Brown*, 426 Md. at 328, 44 A.3d at 362; *see also Kremer*, 432 Md. at 335–36, 340–41, 68 A.3d at 866–69, 871 (disbarring an attorney where he committed misconduct with respect to four clients, failed to cooperate with Bar Counsel, failed to file bankruptcy petitions for multiple clients, missed hearings, caused a case to be dismissed, failed to respond to clients, abandoned cases before completion, and failed to return to clients documents and unearned fees). In comparison, Shapiro's misrepresentations were limited to one case with one client.

When an attorney's misrepresentations are paired with violations of the MLRPC provisions regarding financial or other property matters, the sanction is most often disbarment. In *Lawson*, an attorney was disbarred for violations of MLRPC 1.5, 1.8, 1.15, and 8.4(c) and (d). 428 Md. at 117, 50 A.3d at 1204. Lawson was dishonest with a client about whether an attorney grievance matter was pending against him. *Id.* The attorney also charged his client an unreasonable fee and mishandled a subsequent fee dispute by inducing a client to enter into a settlement agreement that gave the attorney a lien on the client's settlement proceeds regarding a marital property dispute. *Lawson*, 428 Md. at 115, 50 A.3d at 1203. The terms of the settlement agreement were not communicated in a way that the client could understand, and the client did not give informed consent, written or otherwise, as to the essential terms of the transaction. *Id.* Because Lawson created and then mismanaged client fee disputes, and was motivated by a desire to obtain fees to which he wasn't entitled from an elderly man in poor health with limited means, we disbarred him. *Lawson*, 428 Md. at 117–19, 50 A.3d at 1204–05; *see also McLaughlin*, 372 Md. at 500–02, 505–06, 813 A.2d at 1164–66, 1168

35

(disbarring an attorney who received over $70,000 from various clients, but did almost no work for them, and created an improper plan for returning unearned fees to clients (creating a loan relationship), but did not advise them to seek independent counsel). Although Shapiro also entered into an agreement in violation of MLRPC 1.8, nothing in the record in this matter indicates that he was motivated by a desire to obtain fees to which he was not entitled. Moreover, MLRPC 1.15 is not implicated here.

*Attorney Grievance Commission v. Pennington*, 387 Md. 565, 876 A.2d 642, is also instructive. In that matter, a client's case was dismissed, but rather than communicating the dismissal to the client, Pennington presented a "settlement" of their claims (which included false documents) to her clients with the intent that they not learn of the suit's dismissal. *Pennington*, 387 Md. at 589–90, 876 A.2d at 656. Instead of disclosing the dismissal of the claim, the respondent attempted to make her clients whole by paying them out of her personal funds what she thought they would find agreeable and what she perceived to be a fair sum. *Pennington*, 387 Md. 572–73, 876 A.2d at 646. Also, Pennington denied repeatedly any dishonesty on her part and misrepresented intentionally matters in negotiations with a third party health care provider. *Pennington*, 387 Md. at 595, 596, 876 A.2d at 660. That respondent's "attempt to purchase a plenary indulgence with her own money is more indicative of a selfish plan to conceal than of a praiseworthy desire to 'make the client whole.'" *Pennington*, 387 Md. at 597–98, 876 A.2d at 661. We determined that, regardless of whether she intended to prevent her clients from finding out that they had a potential legal malpractice claim against her or whether she acted out of a desire to spare her clients further anguish, "the profession is

36

harmed when an attorney intentionally misrepresents matters to a client and behaves in the manner as did respondent," and that such behavior warrants disbarment. *Pennington*, 387 Md. at 598, 876 A.2d at 661–62. By contrast, Shapiro lied to his client about the status of her claim, and told her that the case had settled when it had not; yet, his misrepresentations were limited to one case and one client and he since took responsibility for his actions.

The attorney in *Davy* was disbarred for multiple violations of MLRPC (1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, and 8.4) where her misconduct involved dishonesty, multiple clients, unreasonable fees, and mishandling of client funds. 435 Md. at 683, 711, 80 A.3d at 326, 343. In that matter, the respondent attempted to file a complaint in federal court, but it was rejected for being incomplete. *Davy*, 435 Md. at 685–86, 80 A.3d at 328–29. The suit was dismissed ultimately. *Davy*, 435 Md. at 689, 80 A.3d at 330. When the client learned through other channels that the complaint had been dismissed, she asked the respondent for return of her retainer. *Davy*, 435 Md. at 687–88, 80 A.3d at 329. Without the client's permission, at a time months later when the attorney should have known that the representation was over, she filed a corrective motion in federal court and asked the client for more money. *Davy*, 435 Md. at 688, 80 A.3d at 330. The respondent led falsely her client to believe that the case had been filed, although the attorney knew the complaint had been rejected, yet still asked for more retainer payments. *Davy*, 435 Md. at 706, 80 A.3d at 340. She told another client that a summons had been issued by the court when in fact it was not. *Davy*, 435 Md. at 687, 80 A.3d at 329. Even after her client learned of the truth of matters and confronted the attorney, Davy attempted to

37

deflect blame by telling the client that she discovered a technical error with the filing. *Davy*, 435 Md. at 688, 80 A.3d at 329. She lied further to the client about what corrective services for which she would charge. *Davy*, 435 Md. at 687–88, 80 A.3d at 329. In another client matter, it took the respondent four months to file a petition for bankruptcy after being retained, and thereafter failed to correct deficiencies in that petition until the bankruptcy court issued a third deficiency notice. *Davy*, 435 Md. at 691, 80 A.3d at 331. Finally, the respondent mishandled client funds. *Davy*, 435 Md. at 702–03, 704–05, 80 A.3d at 338–339.

When considering the appropriate sanction for that attorney, we noted that she committed misconduct with respect to two clients, was intentionally dishonest on at least six occasions, refused to acknowledge the wrongful nature of her conduct, and had been suspended indefinitely previously. *Davy*, 435 Md. at 708–10, 80 A.3d at 341–43. We noted further that the respondent showed a dishonest or selfish motive involving the receiving and keeping of money, mislead her clients as to the quality of her representation, and continued to act on the client's behalf after the representation had ended so as to justify continuing to demand payments from the client. *Davy*, 435 Md. at 711, 80 A.3d at 343. Davy was disbarred. *Attorney Grievance Commission v. Davy*, 434 Md. 246, 74 A.3d 727 (2013). Although Shapiro misrepresented to Wisniewski the status of her claim, he confessed ultimately his lie to his client and cooperated with Bar Counsel. As noted earlier, Shapiro's misconduct does not implicate MLRPC 1.15.

In *Steinberg*, 395 Md. 337, 910 A.2d 429, the respondent's misconduct was committed with respect to three different parties (two clients and an attorney colleague).

38

Steinberg failed to file a petition for bankruptcy on behalf of a client and then failed to forestall a foreclosure sale that was the reason for seeking the protection of the bankruptcy court. *Steinberg*, 395 Md. at 367–68, 910 A.2d at 447. When asked by the client for a status update, he responded dishonestly by saying that he had filed the petition (he filed later one without her consent or signature). *Steinberg*, 395 Md. at 368–69, 910 A.2d at 447–48. In another client matter, Steinberg entered into an agreement that limited his liability for professional negligence when his client was not represented independently and did not have an opportunity to consider the document or obtain advice of counsel. *Steinberg*, 395 Md. at 365, 910 A.2d at 445. Steinberg failed to appear at client meetings, and was unprepared during a mediation session. *Steinberg*, 395 Md. at 362, 910 A.2d at 444. He did not return a file to a client when asked and refused to withdraw after a client terminated representation, brought a frivolous suit, and engaged in a pattern of delay by not cooperating or complying with discovery agreements with opposing counsel. *Steinberg*, 395 Md. at 365–66, 910 A.2d at 445–46. Because Steinberg violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.5(c), 1.8, 1.16, 3.1, 3.2, 3.3, 3.4, 4.1, and, accordingly, 8.1, we disbarred him. *Steinberg*, 395 Md. at 371, 376, 910 A.2d at 449, 452.

The misrepresentations of Shapiro, on the other hand, were limited to one client, although his misrepresentations and the improper agreement were similar to those in *Steinberg*. The Respondent did not violate MLRPC 1.5, 3.1, 3.2, 3.3, 3.4, and 4.1 as did the respondent in *Steinberg*. *See also Park*, 427 Md. at 196, 46 A.3d at 1162 ("[D]isbarment is the appropriate sanction when an attorney abandons a client by failing

to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees. Respondent did all of this and failed to cooperate with Bar Counsel's lawful demands for information, in violation of MLRPC 8.1."); *De La Paz*, 418 Md. at 558, 16 A.3d at 195 (disbarring an attorney who neglected the affairs of multiple clients, failed to appear at a hearing, ignored repeated case status inquiries from clients, moved his office without informing his clients, and failed to respond to the lawful inquiries of Bar Counsel for information); *Fox*, 417 Md. at 544–45, 11 A.3d at 785 ("The combination of [r]espondent's violations—in particular, abandonment of his clients, misrepresentation, and failure to cooperate with Bar Counsel's investigation—convinces us that [r]espondent is unfit to practice law in Maryland and disbarment is the appropriate sanction to protect the public.").

In determining an appropriate sanction, we consider also any aggravating or mitigating factors. *Kremer*, 432 Md. at 339, 68 A.3d at 870. A respondent bears the burden of proving matters of mitigation or extenuation by a preponderance of the evidence. Md. Rule 16-757(b).

On the subject of mitigating and extenuating circumstances, the hearing judge noted in the present case:

> Respondent offers very little in the way of mitigation, other than his own testimony that he has faithfully complied with the terms of his settlement agreement with Wisniewski. Respondent maintains that his agreement with Wisniewski was more than adequate in making Wisniewski whole.

> However, this Court once again notes that no evidence has been offered in this case regarding the specific nature or potential value of Wisniewski's medical malpractice claim against St. Agnes Hospital. Therefore, the Court is unable to determine the adequacy of such redress.

(minor alterations added).

In weighing possible aggravating factors, we turn, as we often do, to the suggested factors of the American Bar Association:

> (a) Prior disciplinary offenses;
> (b) Dishonest or selfish motive;
> (c) A pattern of misconduct;
> (d) Multiple offenses;
> (e) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) Submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) Refusal to acknowledge the wrongful nature of conduct;
> (h) Vulnerability of victim;
> (i) Substantial experience in the practice of law;
> (j) Indifference to making restitution;
> (k) Illegal conduct, including that involving the use of controlled substances.

American Bar Association, *Standards for Imposing Lawyer Sanctions*, § 9.22, Compendium of Professional Responsibility Rules and Standards (2012); *see Coppock*, 432 Md. at 648, 69 A.3d at 1103. Petitioner suggests that factors (a), (b), (c), (d), (h), and (i) are implicated here. First, Respondent was the subject of a previous disciplinary action. The Attorney Grievance Commission reprimanded Respondent on 24 February 2012 for negligently failing to maintain and remit timely withholding taxes to the IRS and the Maryland Comptroller for five quarters beginning 31 December 2007 and ending 31 December 2008. *But see Reinhardt*, 391 Md. at 223–24, 230 n.4, 892 A.2d at 541,

41

545 n.4 (determining that an indefinite suspension was appropriate even though the respondent had been suspended indefinitely previously). Second, Petitioner argues that Respondent's lies to Wisniewski stem from a dishonest and selfish motive. The hearing judge did not make a specific finding as to Respondent's motives here, but we note for comparison that in *Reinhardt* we concluded that there was "no evidence that he acted out of fraudulent or selfish motive" when an attorney made misrepresentations to his client out of "absolute embarrassment." *Reinhardt*, 391 Md. at 223–24, 230 n.4, 892 A.2d at 541, 545 n.4. Not wishing to admit his mistakes to her, Shapiro created a lie that snowballed over time. Third, Respondent's continued misrepresentations to Wisniewski over a period of several years constitute undoubtedly a pattern of misconduct. Fourth, Respondent's conduct involved several distinct violations of the MLRPC. He failed to communicate with Wisniewski regarding his difficulty in obtaining an expert, the dismissal of her case, and the expired statute of limitations. He failed to withdraw from the case when he realized that she may have had a cause of action against him. He lied to her about the existence of a fictitious settlement. Ultimately, his execution of a settlement agreement with Wisniewski violated the MLRPC yet again. Fifth, Petitioner suggests that Wisniewski is a vulnerable victim, as the two knew each other, according to Respondent's testimony, "beyond this representation" and had "more than just a lawyer-client relationship." This relationship influenced likely Wisniewski's trust in him—both in his misrepresentations and further in the purported fairness of the settlement agreement. Finally, Respondent has substantial experience in the practice of law, having practiced law in Maryland for over thirty years.

42

Bearing all of the foregoing analysis in mind, we conclude ultimately that Respondent's misconduct warrants the sanction of an indefinite suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EUGENE ALAN SHAPIRO.**

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 83

September Term, 2013

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

EUGENE ALAN SHAPIRO

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Dissenting Opinion by Battaglia, J.
which Watts, J., joins.

Filed: January 30, 2015

I respectfully dissent as to the sanction only because disbarment is the appropriate sanction in this case, not indefinite suspension.

Shapiro's conduct amounted to violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.2, 1.3, 1.4, 1.8, 1.16 and 8.4(a), (c) and (d). It is his actions, in actively misrepresenting the status of a case to his client for five years, constituting a violation of Rule 8.4(c), which propel his sanction into the realm of disbarment.

Intentional violations of MLRPC 8.4(c) constitute "most egregious misconduct." *Attorney Grievance v. Davy*, 435 Md. 674, 708, 80 A.3d 322, 342 (2013). "[W]hen a [lawyer] engages in dishonest or fraudulent conduct as proscribed in M[L]RPC 8.4(c), we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances." *Id.* at 709, 80 A.3d at 342 (internal quotations omitted). In cases where an attorney's repeated material misrepresentations constitute a pattern of deceitful conduct, as opposed to an isolated instance, the appropriate sanction, as a general rule, is disbarment. *See Attorney Grievance v. Steinberg*, 395 Md. 337, 373, 910 A.2d 429, 450 (2006) ("We long have held that repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment."). If nothing else, lawyers must be honest:

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in any attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Id.*, quoting *Attorney Grievance v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001). "When attorneys engage in dishonest and deceitful conduct for personal gain, this Court does not hesitate to sanction such conduct with disbarment[.]" *Attorney Grievance v. Levin*, 438 Md. 211, 231, 91 A.3d 1101, 1113 (2014).

*Attorney Grievance v. Pennington*, 387 Md. 565, 876 A.2d 642 (2005), is instructive. In that matter, the clients' case was dismissed, but rather than communicating the dismissal to the clients, Pennington presented a "settlement" of their claims (which included false supporting documents) to her clients with the intent that they not learn of the suit's dismissal. Instead of disclosing the dismissal of the claim, the respondent attempted to make her clients whole by paying them out of her personal funds what she thought they would find agreeable and what she perceived to be a fair sum. Also, Pennington denied repeatedly any dishonesty on her part and misrepresented intentionally matters in negotiations with a third party health care provider. We described the circumstances as the respondent's "attempt to purchase a plenary indulgence with her own money [which was] more indicative of a selfish plan to conceal than of a praiseworthy desire to 'make the client whole.'" *Id.* at 598, 876 A.2d at 661. The Court concluded that, regardless of whether she intended to prevent her clients from finding out that they had a potential legal malpractice claim against her or whether she acted out of a desire to spare her clients further anguish, "the profession is harmed when an attorney intentionally misrepresents matters to a client and behaves in the manner as did respondent" and that such behavior warrants disbarment. The facts of the present case are similar to those in *Pennington*. Here, Shapiro did not communicate to Wisniewski the true status of her

medical malpractice claim, but instead, to hide the facts, told her that he had secured a settlement on her behalf. When Wisniewski met with Respondent to learn more about the terms of her settlement, he told her that he did not have the money. Although the hearing judge did not determine if Respondent intended to "come clean" at the latter meeting with Wisniewski, or if he would have paid her from his own funds had he the cash on hand, Respondent's deceit is in the same church (if not exactly the same pew) as that of the attorney in *Pennington*.

In *Steinberg*, 395 Md. 337, 910 A.2d 429, the respondent's misconduct was committed with respect to three different parties (two clients and an attorney colleague), yet elements of this case are reminiscent of Shapiro's case. Steinberg failed to file a petition for bankruptcy on behalf of a client and then failed to forestall a foreclosure sale that was the reason for seeking the protection of the bankruptcy court. When asked by the client for a status update, Steinberg responded dishonestly by saying that he had filed the petition (he filed later one without her consent or signature). In another client matter, Steinberg entered into an agreement that limited liability for his professional negligence where his client was not represented independently and did not have an opportunity to consider the document or obtain advice of counsel, in violation of MLRPC 1.8. These actions, in addition to other misconduct (including violations of MLRPC 1.1, 1.4, 1.5(c), 1.16, 3.1, 3.2, 3.3, 3.4 and 4.1), warranted disbarment. As in *Steinberg*, Shapiro failed to file a necessary document, in this case, a Certificate of Merit, and then misled his client as to whether he had done so. Further, Shapiro entered into a settlement agreement with Wisniewski, in violation of MLRPC 1.8.

The attorney in *Davy*, 435 Md. 674, 80 A.3d 322, was disbarred for violations of MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16 and 8.4, where her misconduct involved dishonesty, multiple clients, unreasonable fees and the mishandling of client funds. In that matter, the respondent attempted to file a complaint in federal court, but it was rejected for being incomplete. The suit was ultimately dismissed. When the client learned through other channels that the complaint had been dismissed, she asked the respondent for return of her retainer. Without the client's permission, at a time months later when the attorney should have known that the representation was over, she filed a corrective motion in federal court and asked the client for more money. The respondent led her client to falsely believe that the case had been filed, although the attorney knew the complaint had been rejected, yet still asked for more retainer payments. She told another client that a summons had been issued by the court when in fact it was not. Even after her client learned of the truth of matters and confronted the attorney, Davy attempted to deflect blame by telling the client that she discovered a technical error with the filing. She lied further to the client about what corrective services for which she would charge. In another client matter, it took the respondent four months to file a petition for bankruptcy after being retained, and thereafter failed to correct deficiencies in that petition until the bankruptcy court issued a third deficiency notice. Finally, the respondent mishandled client funds.

When considering the appropriate sanction, we noted that the respondent showed a dishonest or selfish motive involving the receiving and keeping of money, mislead her clients as to the quality of her representation and continued to act on the client's behalf after the representation had ended to justify continuing to demand payments from the

4

client. Davy was disbarred. Unlike Davy, Shapiro was not charged with fiscal misconduct. Nonetheless, Respondent, like Davy, failed to file appropriate pleadings and did not take responsibility immediately for his failures, but instead misled Wisniewski into thinking that her claim was alive and, further, that a settlement had been reached.

The misconduct in *Attorney Grievance v. Bleecker*, 414 Md. 147, 994 A.2d 928 (2010), resembles the misconduct in Shapiro's matter. In *Bleecker*, the respondent did not file timely in court his client's claim and ultimately missed the statute of limitations deadline. Once he became aware of the "blown" statute of limitations deadline, a conflict of interest existed between himself and his client, such that he should have withdrawn from representation and told his client to seek independent counsel, which he did not. Moreover, he failed to inform his client that her case was dismissed and that the statute of limitations expired. Bleecker failed also to correct a material mistake on filed pleadings, and later, to respond to three letters from Bar Counsel seeking information regarding the client complaint. Violations of MLRPC 1.1, 1.3, 1.4, 1.16, 3.3, 8.1 and 8.4 were found. We concluded that the "gravamen of the misconduct" was the respondent's concealment from his client of the statute of limitations bar, which precluded her from any possible recovery. Bleecker's failure to correct the misrepresentation to the court and his failure to respond to Bar Counsel were also significant to the Court in its sanction analysis. The appropriate sanction was disbarment. The "gravamen" of Shapiro's misconduct is also his concealment of the true status of Wisniewski's claim from her and his direct misrepresentations to that effect, and the improperly obtained settlement agreement.

5

The respondent in *Attorney Grievance v. Lane*, 367 Md. 633, 647, 790 A.2d 621, 629 (2002) found himself caught in a snowballing series of lies, similar to that of the Respondent in this matter, although the cumulative lies of the attorney in *Lane* were of "the most egregious nature" and the misconduct was committed against two clients. Lane took no action on a client's case and filed no pleadings of any kind, yet told his client that a subpoena had been issued for the opposing party. He met his client at the courthouse and told his client that the opposing party had failed to appear. Lane then took his leave by pretending to have a meeting with the judge, and returned to inform falsely his client that the judge would rule in his favor. He claimed later that the opposing party had filed a "stay." With respect to another client, Lane did not communicate properly the terms of their fee arrangement, paid some of the client's bills from his own funds, and did not file the appropriate pleadings in order to secure an injunction against a utility threatening to turn off his client's water service. He then said that he filed a motion for sanctions against the water company for turning off his client's water, and paid his client a sum of money that he said came from the company as a result of the sanctions action, but, in reality, came from his own funds. Finally, he told the same client that he filed a motion for summary judgment, which was granted, resulting in an award to her of over 11 million dollars. She was told to come to the courthouse with a suitcase and security to carry the cash home. When she arrived at the courthouse, he confessed that he had misled her completely regarding the status of her lawsuit and that no money was forthcoming. It was little surprise that Lane was disbarred. Like the attorney in *Lane*, Shapiro misrepresented to Wisniewski

the status of her claim, and then concocted a fictional "settlement" of her claim against the hospital.

In *Attorney Grievance v. Brown*, 426 Md. 298, 44 A.3d 344 (2012), the respondent committed various acts of misconduct with respect to four clients. He failed to pursue a client's claims in a timely manner, which caused the statute of limitations to expire before the case was dismissed for a failure to prosecute. The attorney failed also to answer discovery requests and incurred sanctions in another client matter. Brown did not inform his clients about the dismissal or the sanctions and ignored repeated requests for information from another client. Further, Brown did not return documents in his case file to a client in a timely manner, and also did not respond to two letters from Bar Counsel requesting information regarding the client's complaint. Such conduct violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.16, 3.2 and 8.1(b). We held also that the manner in which Brown misled his client violated MLRPC 8.4(c), as he told one of his clients that the case was pending in arbitration, when, in actuality, it was dismissed two years previously. Given the "gravity and pervasiveness" of Brown's misconduct, we concluded that disbarment was the appropriate sanction. *Id.* at 328, 44 A.3d at 362; *see also Attorney Grievance v. Kremer*, 432 Md. 325, 335-36, 340-41, 68 A.3d 862, 866-69, 871 (2013) (disbarring an attorney who committed misconduct with respect to four clients, failed to cooperate with Bar Counsel, failed to file bankruptcy petitions for multiple clients, missed hearings, caused a case to be dismissed, failed to respond to clients, abandoned cases before completion, and failed to return documents and unearned fees); *Attorney Grievance v. Park*, 427 Md. 180, 196, 46 A.3d 1153, 1162 (2012) ("[D]isbarment is the appropriate sanction when an

7

attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees. Respondent did all of this and failed to cooperate with Bar Counsel's lawful demands for information, in violation of MLRPC 8.1.").

When an attorney's misrepresentations are paired with violations of the MLRPC provisions regarding unreasonable fees or client or third party property (and especially money), the appropriate sanction is most often disbarment. In *Attorney Grievance v. Lawson*, 428 Md. 102, 117, 50 A.3d 1196, 1205 (2012), an attorney was disbarred for violations of MLRPC 1.5, 1.8, 1.15 and 8.4(c) and (d). Lawson was dishonest with a client about whether an attorney grievance matter was pending against him. The attorney also charged his client an unreasonable fee and mishandled a subsequent fee dispute by inducing the client to enter into a settlement agreement that gave the attorney a lien on the client's settlement proceeds of a marital property dispute. The terms of the settlement agreement were not communicated in a way that the client could understand, and the client did not give informed consent, written or otherwise, as to the essential terms of the transaction. Because Lawson created and then mismanaged client fee disputes, and was motivated by a desire to obtain fees to which he was not entitled from an elderly man in poor health with limited means, we disbarred him. The Respondent in the present case executed an agreement with Wisniewski that violated the MLRPC in the same critical way as the agreement in *Lawson*: Respondent did not give Wisniewski a written disclosure of the

8

desirability of seeking independent counsel prior to entering into the agreement with Respondent. By the same token, there is no MLRPC 1.15 violation in Shapiro's case.

Although Shapiro's violations do not involve multiple clients and cases, his misconduct spans a multiple-year period. He actively misrepresented the status of the case to Wisniewski for five years and failed to inform her of the difficulties he had in finding a doctor to execute a Certificate of Merit. Not only did Respondent lie to Wisniewski about the status of her case, his lies spiraled: he told her that the case had settled when no such settlement had occurred, but ultimately he did not have the money available to fund the "settlement." Respondent only told Wisniewski the truth about her case—that it had been dismissed, that the statute of limitations had passed, and that no settlement occurred—after she filed a complaint with the Attorney Grievance Commission. Respondent violated additional MLRPC by settling a potential legal malpractice claim with Wisniewski without advising her in writing of the desirability of seeking the advice of independent counsel or obtaining her informed consent, confirmed in writing, to the essential terms of the transaction.

Accordingly, I would order Respondent's disbarment.

Judge Watts authorizes me to state that she joins the views expressed in this dissenting opinion.

9